Appeal No. 21-3332

In the
# United States Court of Appeals
### For the Seventh Circuit
**Chicago, Illinois  60604**

JOHN SABO,

      Plaintiff – Appellant,

          v.

MEGAN ERICKSON, et al.,

      Defendants – Appellees.

On Appeal from the United States District Court
For the Eastern District of Wisconsin,
The Honorable Magistrate Judge William E. Duffin Presiding,
District Court Case No: 2:20-cv-00718-WED

**Brief and Short Appendix of Plaintiff–Appellant**

Jeff Scott Olson
THE JEFF SCOTT OLSON LAW FIRM, S.C.
131 West Wilson St., Ste. 1200
Madison, WI 53703
608-283-6001
jsolson@scofflaw.com

*Counsel of Record for Plaintiff-Appellant*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, counsel for the Plaintiff-Appellant, Jeff Scott Olson, hereby makes the following disclosures.

1.    The full name of every party that the attorney represents in the case:

John Sabo

2.    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear in this Court.

The Jeff Scott Olson Law Firm, S.C.

3.    If the party or amicus is a corporation:  (i) identify all of its parent corporations, if any.

John Sabo is not a corporation.

4.    List any publicly held company that owns 10% or more of the party's or amicus's stock.

Not applicable.

Dated this Tuesday, June 07, 2022.

Respectfully submitted,

THE JEFF SCOTT OLSON LAW FIRM, S.C.

/s/Jeff Scott Olson

_____

Jeff Scott Olson
ATTORNEYS FOR PLAINTIFF–APPELLANT

Appeal No. 21-3332

# In the
# United States Court of Appeals
## For the Seventh Circuit
**Chicago, Illinois  60604**

JOHN SABO,

> Plaintiff – Appellant,

> v.

MEGAN ERICKSON, et al.,

> Defendants – Appellees.

On Appeal from the United States District Court
For the Eastern District of Wisconsin,
The Honorable Magistrate Judge William E. Duffin Presiding,
District Court Case No: 2:20-cv-00718-WED

### Brief of Plaintiff–Appellant

Jeff Scott Olson
THE JEFF SCOTT OLSON LAW FIRM, S.C.
131 West Wilson St., Ste. 1200
Madison, WI 53703
608-283-6001
jsolson@scofflaw.com

*Counsel of Record for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS.....................................................................................................i

TABLE OF AUTHORITIES ............................................................................................iii

JURISDICTIONAL STATEMENT ...................................................................................1

ISSUES PRESENTED FOR REVIEW...............................................................................2

STATEMENT OF THE CASE............................................................................................4

Facts ....................................................................................................................................7

I.      The Wisconsin Department of Corrections Creates Machinery to Correct
        Unlawful Criminal Sentences Frequently Imposed by Circuit Court Judges. ....7

II.     John Sabo is Sentenced to an Unlawfully Long Term of Probation. .........10

III.    The Central Records Unit Fails to Recognize, and then Fails to Correct,
        John Sabo's Unlawfully Long Term of Probation...................................................11

IV.     John Sabo is Arrested........................................................................................13

V.      Sabo Discovers he is Unlawfully Incarcerated. ...........................................15

VI.     The Present Litigation .......................................................................................18

SUMMARY OF ARGUMENT.......................................................................................24

ARGUMENT ...................................................................................................................26

I.      The Standard of Review of a Rule 12(b)(6) Dismissal is *De Novo*. .............26

II.     The Standard of Review of a Summary Judgment Decision is *De Novo*...28

III.    The Central Records Bureau Defendants: Haley and Hicks......................30

A.      This Case is not like Those Where the Plaintiff Relied Only upon a
        General Risk of Human Error..................................................................................32

B.    Deliberate indifference to a risk of constitutional injury is not rendered lawful by a public official's decision not to ascertain the identities of those who will be injured. ............................................................................................... 37

1.    All of the cases where liability is premised on a general policy that embodies deliberate indifference toward constitutional injuries contradict the holding of the court below........................................................................... 40

C.    The Central Records Unit Defendants, Whose Jobs Required them to Correct Sentencing Errors, Were Among Those Who Could Violate Offenders' Constitutional Rights By Deliberate Indifference to a Serious Risk of Unlawful Deprivations of Liberty. .................................................................... 45

IV.    The Community Corrections Defendants: Erickson and Hanson ............. 48

A.    Absolute Immunity for Recommending Incarceration Pending a Revocation Decision. .................................................................................................. 48

B.    Liability for Not Directing Mr. Sabo's Release when Erickson and Hanson Learned He was not Lawfully on Probation. ......................................... 49

1.    Despite the Position of the Department of Corrections' Legal Counsel, the Unlawful Judgment of Conviction was Already Commuted by Statute when Erickson and Hanson Made Their Decisions. ..................................... 50

2.    Even if Erickson and Hanson were Required to Enforce the Judgment of Conviction, They were Not Required to Hold Mr. Sabo In Custody..... 52

C.    Erickson and Hanson Violated the Fourth Amendment.......................... 58

CONCLUSION............................................................................................................. 60

Rule 32(a)(7) CERTIFICATION ........................................................................... 61

FORMER CIRCUIT RULE 31(e) CERTIFICATE ......................................................... 62

CERTIFICATE OF SERVICE ........................................................................................ 62

# TABLE OF AUTHORITIES

## CASES

*Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820 (7th Cir. 2020) ..............................36

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) ..........................................28

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................................29

*Armstrong v. Squadrito*, 152 F. 3d 564 [(7th Cir.1998) ...........................................43, 44

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................28

*Bilek v. Federal Insurance Co.*, 8 F.4th 581 (7th Cir. 2021). ...........................................27

*Burke v. Johnston*, 452 F.3d 665 (7th Cir. 2006)..............................................................31

*Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002)....................................................33, 35, 41

*Campbell v. Illinois Department of Corrections*, 907 F. Supp. 1173 (N.D. Ill. 1995)....34

*Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001) ............................................................31

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................................................29

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ......................................................42

*Combs v. Pederson*, No. 008-CV-482-SLC, 2009 WL 982600 (W.D. Wis. Apr. 10,
2009).................................................................................................................................48

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. 2021)
.........................................................................................................................................27

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007)...........................27

*Farmer v. Brennan*, 511 U.S. 825 (1994) ...................................................................34, 36

*Figgs v. Dawson*, 829 F.3d 895 (7th Cir. 2016) ..................................................31, 56, 59

*G. M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631 (7th Cir. 2003) ..................28

*Georgia v. Public Resource Org, Inc.*, 140 S. Ct. 1498 (2020).........................................36

*Gregg v. Georgia*, 428 U.S. 153 (1976)..............................................................................30

*Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) ......................................................49

*Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) .................................................................60

*Hoeft v. Anderson*, No. 09-cv-138, 2010 WL 2720002 (W.D. Wis. July 6, 2010)........59

*Jackson v. Marion County*, 66 F.3d 151 (7th Cir.1995)....................................................28

*James v. Milwaukee County*, 956 F.2d 696 (7th Cir. 1992) .............................................33

*Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923 (7th Cir. 2020)...........................................29

*Knox v. Smith*, 342 F.3d 651 (7th Cir. 2003) ...................................................................60

*Lafaive v. City of Waukesha*, No. 21-CV-0486-BHL, 2021 WL 1984870 (E.D. Wis.
May 18, 2021)..................................................................................................................59

*Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999)............................................................44

*Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 732 F.3d 755 (7th Cir. 2013)....36

*Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993)..................................................................49

*Outlaw v. Newkirk*, 259 Fed.3d 833 (7th Cir. 2001) .......................................................29

*Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015) ................................................................ 40

*Perrault v. Wisconsin*, No. 15-cv-144-bbc, 2016 U.S. Dist. LEXIS 2838 (W.D. Wis.

  Jan. 11, 2016) ............................................................................................................ 33, 35, 41

*Rhodes v. Chapman*, 452 U.S. 337 (1981) .......................................................................... 30

*Rodriguez v. United States*, 575 U.S. 348 (2015) .............................................................. 60

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989) ....................................................... passim

*State v. Betterley*, 191 Wis. 2d 406, 529 N.W.2d 216 (1995) .......................................... 15

*State v. Oglesby*, 2006 WI App 95, 292 Wis. 2d 716, 715 N.W.2d 727 ....................... 52

*Taylor v. Louisiana*, 419 U.S. 522 (1975) .......................................................................... 30

*Tolan v. Cotton*, 572 U.S. 650 (2014) .................................................................................. 29

*United States v. Dobek*, 789 F.3d 698 (7th Cir. 2015) ..................................................... 36

*United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007) ............................................. 58

*Vance v. Peters*, 97 F.3d 987 (7th Cir.1996) ...................................................................... 40

*Walters v. Village of Oak Lawn*, 548 F. Supp. 417 (N.D. Ill. 1982) ............................... 42

*Watford v. Miller*, No. 09-C-244, 2010 WL 1257812 (E.D. Wis. Mar. 26, 2010) ........ 47

## STATUTES

28 U.S.C. § 1291 ...................................................................................................................... 1

28 U.S.C. § 1331 ...................................................................................................................... 1

28 U.S.C. § 1367 ...................................................................................................................... 1

28 U.S.C. § 1391 ...................................................................................................................... 1

42 U.S.C. § 1983 ................................................................................................. 1, 33, 37, 41

Wis. Stat. § 346.63(1) ........................................................................................................... 10

Wis. Stat. § 973.09(2) ........................................................................................................... 11

Wis. Stat. § 973.09(2)(b)1 .................................................................................................... 11

Wis. Stat. § 973.09(2m) .................................................................................................. passim

## RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................... i, 5, 26, 27

Fed. R. Civ. P. 56(c) .............................................................................................................. 28

Wis. Admin. Code § DOC 328.22(2)(a) ............................................................................ 14

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this action, which asserted

claims under 42 U.S.C. § 1983 and state law, pursuant to 28 U.S.C. §

1331 (general federal question jurisdiction) and 28 U.S.C. § 1367

(supplemental jurisdiction). The Eastern District of Wisconsin was the

proper venue for this action because a substantial part of the events or

omissions giving rise to the claim occurred in that judicial district

within the meaning of 28 U.S.C. § 1391.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. §

1291.

The district court entered a Decision and Order granting the

Defendants' Motion to Dismiss and dismissing all of the Plaintiff's

claims, except his Eighth and Fourth Amendment claims against

Defendants Erickson and Hanson, as alleged in paragraphs 506 and

507 of the First Amended Complaint (Sep. App. 65, dkt. #10), on

November 12, 2020. (App. 1, dkt # 19.) The court entered an order

1

denying the Plaintiff's motion for reconsideration of that decision on May 6, 2021. (App. 33, dkt # 25.)

The remaining claims against Defendants Erickson and Hanson were dismissed in a Decision and Order granting their motion for summary judgment on November 29, 2021. (App. 47, dkt. # 49.) The court entered judgment in favor of all Defendants, dismissing the action with prejudice, on November 30, 2021. (App. 57, dkt. # 50.)

No motion for a new trial, nor for alteration of the judgment, nor any motion claimed to toll the time within which to appeal, has been filed since the entry of the November 30, 2021, judgment. The Plaintiff timely filed this appeal by electronically filing a Notice of Appeal in the district court clerk's on December 16, 2021. (Dkt. # 56.) There have been no prior or related appellate proceedings.

## ISSUES PRESENTED FOR REVIEW

Were the Plaintiff's deliberate indifference claims against two Wisconsin Department of Corrections Central Records Unit clerks (whose jobs included correcting unlawfully long terms of probation)

who failed to correct the plaintiff's unlawful probation sentence, properly dismissed where, although they admitted that they had mistakenly failed to correct a significant number of unlawful sentences over a multi-month period due to a misunderstanding of the law, and did nothing at all to correct these mistakes when they realized they had made them, they did not know that Plaintiff John Sabo was one of the members of this affected group?

Were these same claims properly dismissed because these Defendants did not have a constitutional duty to ensure that unlawfully long sentences were corrected?

Were the Plaintiff's Eighth Amendment deliberate indifference and Fourth Amendment unreasonable seizure claims against a Wisconsin Department of Corrections probation agent and her superior who reacted to Plaintiff Sabo's arrest on a misdemeanor charge by commencing proceedings to revoke his probation and ordering his incarceration pending the result of those proceedings, then learned that he had not even been lawfully on probation when he was arrested, yet neither terminated their revocation proceeding

nor ordered his release from custody, properly dismissed because
they had no constitutional duty to take either action upon learning
that Mr. Sabo's incarceration was unlawful?

## STATEMENT OF THE CASE

This case involves alleged wrongdoing at two different
times and two different places, by two different sets of Defendants.

It is undisputed that in 2004, John Sabo was sentenced to an
unlawfully long term of probation.  Because his probation term on
the 2004 case was consecutive to other sentences, Mr. Sabo did not
begin his term of probation on that case until July 20, 2014.

Initially, Plaintiff Sabo alleged, Defendants Debra Haley and
Sheri Hicks were employees of the Wisconsin Department of
Corrections' Central Records Unit whose jobs were to review
probation terms shortly after they were imposed and to correct
unlawful terms of probation imposed by Wisconsin circuit court
judges. Wisconsin's sentencing law had changed in 2003, and Haley
and Hicks originally misunderstood certain aspects of the new law.

4

Sabo alleged that after they learned that they had, over a multi-month time frame, reviewed the sentences of a particular class of inmates, of which he was a member, under an erroneous standard, and inevitably had let many unlawfully long terms of probation go uncorrected, they intentionally took no steps to correct an unlawful term of probation imposed on him and on others in the same situation, even. Mr. Sabo alleged that their inaction amounted to deliberate indifference to his unlawful sentence and violated his rights under the Eighth and Fourteenth Amendments. (Sep. App.[1] 78, dkt. # 10, ¶ 501.) Since the Plaintiff's claims against them were dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim in the First Amended Complaint, the facts set forth here come from the First Amended Complaint (Sep. App. 65-82, dkt. # 10).

Later, in 2017, when Mr. Sabo was serving the unlawfully long term of probation Defendants Hicks and Haley had failed to correct,

---

[1] Reference to the separately bound appendix submitted by the Plaintiff-Appellant will be shown as "Sep. App." References to the required Short Appendix bound with the Plaintiff-Appellant's brief will be shown as "Short App.")

he was arrested for a misdemeanor and ordered incarcerated in the local jail by his supervising probation officer, Defendant Megan Erickson, pending the anticipated revocation of his probation. Mr. Sabo does not appeal the dismissal of his claim that Erickson and her superior, Barb Hanson, unlawfully failed to independently verify the lawfulness of the probation component of his sentence before initiating revocation proceedings.

When Erickson and Hanson were informed, as a result of the efforts of Mr. Sabo's criminal defense lawyer, that the term of probation they were moving to revoke had, by law, expired before his arrest, such that there was no lawful probation to revoke, they could have ordered his release immediately, even before the sentence was corrected by the sentencing judge, but they did not. Mr. Sabo alleged that their failure to do so violated his rights under the Fourth and Eighth Amendments. (Sep. App. 80, dkt. # 10, ¶¶ 506-507.) Since these claims against Erickson and Hanson were dismissed on summary judgment, the facts regarding these

6

Defendants come from the parties' proposed findings, to the extent

that they were admitted, and from the evidence.

## Facts

### I.   The Wisconsin Department of Corrections Creates Machinery to Correct Unlawful Criminal Sentences Frequently Imposed by Circuit Court Judges.

In the years after the turn of the century, Wisconsin tinkered

with its criminal sentencing structure repeatedly,[2] and, as  shown

below, Wisconsin circuit court judges made a lot of mistakes in

imposing criminal sentences, especially terms of probation. This

possibility was anticipated in the statutes. In flinty terms, Wis. Stat. §

973.09(2m)[3] provided:

> If a court imposes a term of probation in excess of the
> maximum authorized by statute, the excess is void and

---

[2] Lynn Adelman, The Adverse Impact of Truth-in-Sentencing on Wisconsin's Efforts to deal with Low- Level Drug Offenders, 47 Val. U. L. Rev. 689, 699 (2013), available at
https://scholar.valpo.edu/vulr/vol47/iss3/1/
(last accessed May 15, 2022)("In the decade after it took effect, TIS created so many problems that the legislature had to revise it at least three times.")

[3] All references to the Wisconsin Statutes are to the 2003–2004 version of the statutes unless otherwise noted.

the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings.

In 2004, the Judgments of Conviction of people who had been placed on probation were reviewed in the Wisconsin Department of Corrections Central Records Unit (CRU) by Defendants Debra Haley and Sheri Hicks. (Sep. App. 69, dkt. # 10, ¶ 407.) In 2004, one of their job duties was to analyze new judgments of conviction with court-ordered terms of probation for completeness and accuracy, including the legality of the length of the term of probation. (Sep. App. 69, dkt. # 10, ¶ 408.)

The job descriptions of Ms. Hicks and Ms. Haley required them to have knowledge of Wisconsin statutes relating to crime, penalty enhancement, and permissible terms of probation, and they each had that knowledge. (Sep. App. 69, dkt. # 10, ¶ 410.)

If Ms. Haley or Ms. Hicks encountered an unlawfully long term of probation on a judgment of conviction, it was their job to correct that judgment of conviction so that the term of probation was lawful. (Sep. App. 69, dkt. # 10, ¶ 411.) To do that, when they

8

encountered a term of probation in excess of what was allowed by law, Ms. Haley and Ms. Hicks would physically cross off the excessive term of probation on the judgment of conviction and write in the maximum allowable term of probation. (Sep. App. 69, dkt. # 10, ¶ 412.)

They would then make two copies of the corrected judgment of conviction. (Sep. App. 70, dkt. # 10, ¶ 413.) One copy stayed in the Central Records Unit files; the other copy, along with a cover sheet and an explanation of why the term of probation had been reduced, was sent to the probation agent of record. (Sep. App. 70, dkt. # 10, ¶ 414.) It was the agent's job to send, as a courtesy, the corrected judgment of conviction and the explanation for the correction back to the sentencing judge. (Sep. App. 70, dkt. # 10, ¶ 415.)

In 2004, approximately five or six judgments of conviction needed to the corrected in this way *each day*. (Sep. App. 70, dkt. # 10, ¶ 416.)

## II.     John Sabo is Sentenced to an Unlawfully Long Term of Probation.

On November 30, 2004, John Sabo was sentenced in Fond du Lac County Case 2003 CF 313 for a violation of Wis. Stat. § 346.63(1) (Driving While Under the Influence), which, by virtue of several prior offenses, was a Class H Felony.  (Sep. App. 68, dkt. # 10, First Amended Complaint, ¶ 401.) He was sentenced to three years in prison and two years on extended supervision.[4]  That sentence was stayed, and he was placed on probation for a period of five years, consecutive to other sentences. (Sep. App. 68, dkt. # 10, ¶ 402.)

The offense that formed the basis for the conviction on Case 2003 CF 313 had been committed on July 29, 2003, so Mr. Sabo was

---

[4] Under Truth-in-Sentencing, extended supervision referred to a period of community supervision following release from prison, like the "parole" that usually followed release under prior law. *State v. Brown*, 2006 WI 131, ¶ 44, 298 Wis. 2d 37, 61, 725 N.W.2d 262, 273. Probation involves a period of community supervision not necessarily preceded by a period of incarceration. "Probation, parole and extended supervision all involve persons under community supervision." *State v. Rowan*, 2012 WI 60, ¶ 10, 341 Wis. 2d 281, 293, 814 N.W.2d 854, 860

sentenced under 2001 Act 109 (Truth In Sentencing II).  (Sep. App. 68, dkt. # 10, ¶ 403.)

Five years was an unlawfully long period of probation for a Class H felony under the Truth in Sentencing II statute. (Sep. App. 68, dkt. # 10, ¶ 404.) Pursuant to Wis. Stat. § 973.09(2)(b)1, the maximum term of probation for conviction of a Class H felony, when Mr. Sabo's offense had occurred, in July, 2003, was three years. (Sep. App. 68, dkt. # 10, ¶ 405.)

### III.    The Central Records Unit Fails to Recognize, and then Fails to Correct, John Sabo's Unlawfully Long Term of Probation.

Within weeks of his sentencing, the paperwork with John Sabo's sentencing information (including the judgment of conviction that listed his date of offense and term of probation) was sent to the Wisconsin Department of Corrections ("DOC") Central Records Bureau.  (Sep. App. 68, dkt. # 10, ¶ 406.)

Although, in 2004 , the statute that governed the length of probation terms, Wis. Stat. § 973.09(2), provided that the original

term of probation was to be not less than one year nor more than either the maximum term of confinement in prison for the crime or three years, whichever was greater, Ms. Haley and Ms. Hicks were then under the erroneous impression that a term of probation for a felony could be as long as the term of confinement in prison *plus* the term of extended supervision, and as a result, many unlawfully long terms of probation escaped their notice during 2004 and early 2005. (Sep. App. 70, dkt. # 10, ¶ 417.) Necessarily, John Sabo's unlawfully long term of probation was one of them, since it came through their office during this time frame.

In 2005, Ms. Haley and Ms. Hicks were given a chart that showed the maximum permissible terms of probation for each type of felony, and upon reviewing that chart, Ms. Haley and Ms. Hicks realized that they had been assessing terms of felony probation incorrectly. (Sep. App. 70, dkt. # 10, ¶ 418.)

They realized that there were judgments of conviction that they had analyzed in 2004 and earlier in 2005 that contained unlawfully long terms of probation. (Sep. App. 71, dkt. # 10, ¶ 419.)

Despite this knowledge, they took no steps to find and correct the unlawful judgments of conviction that they knew they had allowed to pass uncorrected in 2004 and early 2005. (Sep. App. 71, dkt. # 10, ¶ 420.)

### IV. John Sabo is Arrested.

Because his sentence in Case 2003 CF 313 was consecutive to other sentences, John Sabo did not begin his term of probation on that case until July 20, 2014. (Sep. App. 71, dkt. # 10, ¶ 423, admitted in Answer, dkt. # 20, ¶ 424.) Since the maximum lawful period of probation for a Class H felony was three years, his probation on Case 2003 CF 313 should have terminated on July 17, 2017.

On December 21, 2017, John Sabo was arrested and charged with a misdemeanor in Racine County Case 2017 CM 2559. (Sep. App. 74, dkt. # 10, ¶ 445 admitted in Answer, dkt. # 20, ¶ 445.)  On December 22, 2017, the Racine County Circuit Court granted Mr. Sabo a signature bond for his release in his new criminal case; if the new prosecution had been the only basis for his custody, he could

have signed his bond and walked out of the courthouse. (Sep. App. 74, dkt. # 10, ¶ 446, admitted in Answer, dkt. # 20, ¶ 466.)

However, Mr. Sabo remained incarcerated because his probation officer, Defendant Megan Erickson, began proceedings to revoke his probation in Case 2003 CF 313, and put a "hold" on him which required his detention in jail while those revocation proceedings went forward. (Sep. App. 74-75, dkt. # 10, ¶ 447, admitted in Answer, dkt. # 20, ¶ 447.)

Agent Erickson consulted with her superiors, her supervisor, Jackie Jones, and Assistant Regional Chief, Defendant Barb Hanson, in December, 2017, and recommended revocation of Mr. Sabo's probation on  Case 2003 CF 313. (Sep. App. 75, dkt. # 10, ¶ 448, admitted in Answer, dkt. # 20, ¶ 448; Sep. App. 89, Defendants' Responses to Plaintiff's Proposed Findings of Fact, Dkt. # 48, ¶ 1.)

An agent can take a probationer into custody "for investigation of an alleged violation." Wis. Admin. Code § DOC 328.22(2)(a). This is called a "probation hold." *State v. Betterley*, 191 Wis. 2d 406, 421, 529 N.W.2d 216, 221 (1995). The decision whether

14

to seek revocation of a person on probation is independent from the decision whether to hold that person in custody while the revocation proceedings are pending.  (Sep. App. 91, Defendants' Responses, Dkt. # 48, ¶ 4.) That is, an agent can proceed with an effort to revoke an offender's probation either while the offender remains free, or while she requires the local jail to hold him in custody.

Ms. Hanson, Ms. Jones, and Ms. Erickson determined that Mr. Sabo would be required to remain in custody while the revocation proceedings were pending.  (Sep. App. 90-91, Defendants' Responses, Dkt. # 48, ¶ 3.)

## V.     Sabo Discovers he is Unlawfully Incarcerated.

Agent Erickson first learned of the sentencing error in Case 2003 CF 313 on April 13, 2018, when Mr. Sabo's attorney, Helmi Hamad, contacted her about the issue. (Sep. App. 84, dkt. # 45, ¶ 5.) In response to that call, Agent Erickson immediately contacted Roxanne Haas and JoAnne Fischer in the Central Records Office of the Wisconsin Department of Corrections Division of Community

15

Corrections, asking them to review Sabo's judgment of conviction. (Sep. App. 85, dkt. # 45, ¶ 6.) Ms. Haas forwarded the email to Janelle Nehring, a Division of Community Corrections Advanced Corrections Sentencing Associate (dkt. # 35-1 at 2), who reviewed the judgment of conviction and determined that Attorney Hamad was correct. (Sep. App. 85, dkt. # 45, ¶ 7.) In her email to Ms. Haas, Ms. Fischer, and Agent Erickson, Ms. Nehring noted that Attorney Allen from the Department of Corrections Office of Legal Counsel had advised Division of Community Corrections staff that they were no longer taking automatic action under Wis. Stat. § 973.09(2m)[5] or filing motions with circuit judges to amend judgments of conviction, but Ms. Nehring said she could send a letter to the court advising it of the apparent error and that Agent Erickson should advise Attorney Hamad to do the same. (Sep. App. 85, dkt. # 45, ¶ 8.)

The April 13, 2018, email from Janelle Nehring confirmed that it was the position of the DOC that "the defense attorney appears to

---

[5] *Supra.*, at 5.

be correct on this one" referring to Agent Erickson's earlier email stating that the defense attorney had said Sabo's sentence was an illegal sentence and he should only have been given three years' probation. (Sep. App. 92, dkt. # 48, ¶ 7.)

Agent Erickson forwarded Nehring's email to Attorney Hamad. (Sep. App. 85, dkt. # 45, ¶ 9.) Both Ms. Nehring and Attorney Hamad wrote the sentencing court about the legal error in the judgment of conviction (Sep. App. 86, dkt. # 45, ¶ 11.)

The DOC continued to treat Mr. Sabo as if he were on probation until May 3, 2018, after the sentencing court corrected his sentence by reducing his term of probation from five years to three years in an Amended Judgment of Conviction. (Sep. App. 71-72, dkt. # 10, ¶ 425, admitted in Answer, dkt. # 20, ¶ 425.) Agent Erickson only dropped the hold on Mr. Sabo on May 3, 2018, after his judgment of conviction was amended. Mr. Sabo was released on that very day, May 3, 2018. (Sep. App. 91, Defendants' Responses, Dkt. # 48, ¶ 5; Sep. App. 86, dkt. # 45, ¶ 11.) Agent Erickson formally withdrew the revocation proceedings four days after Sabo had been

17

released from custody, on May 7, 2018. (Sep. App. 91, Defendants'
Responses, Dkt. # 48, ¶ 6.)

John Sabo was held in Racine County Jail from December 21,
2017, until May 3, 2018, a period of 134 days. (Sep. App. 77, dkt. #
10, ¶ 463, Admitted in Answer, dkt. # 20, ¶ 463.) From April 13,
2018, the date of Ms. Nehring's email confirming the unlawfulness
of Mr. Sabo's incarceration, to May 3, 2018, the day he was released,
Mr. Sabo spent 20 days behind bars.

## VI.    The Present Litigation

Mr. Sabo filed this lawsuit on May 11, 2020. (Dkt. # 1.) By the
time the Court issued its first ruling, on the Defendants' Second
Motion to Dismiss (dkt. # 11), the operant pleading was the First
Amended Complaint (Sep. App. 65, dkt. # 10.) In it, Mr. Sabo alleged
that Central Records Unit Defendants Hicks and Haley had violated
the Eighth Amendment by their deliberate indifference to the
unlawfully long terms of probation that, in 2005, they realized had
escaped their correction in 2004 and early 2005. (Sep. App. 78, dkt. #

10, ¶ 501.) He also pled a state law negligence claim against Defendants Hicks and Haley for failing to perceive and correct Mr. Sabo's unlawful sentence when they first reviewed his Judgment of Conviction. (Sep. App. 80, dkt. # 10, ¶ 508.)

As to the Division of Community Corrections field staff Defendants, Sabo's probation officer, Megan Erickson and her superior, Barb Hanson, Sabo alleged that they had violated his Eighth and Fourteenth Amendment rights by failing to perceive and correct his unlawful probation term when he came under their supervision (Sep. App. 79, dkt. # 10, ¶¶ 502-503), violated his Eighth and Fourteenth Amendment rights by ordering him incarcerated pursuant to a probation hold when he was arrested during the unlawful portion of the erroneous probation term under which he was being supervised (Sep. App. 79, dkt. # 10, ¶¶ 504-505), violated his Eighth and Fourth Amendment rights by not immediately quashing their probation hold and effecting Mr. Sabo's release when the unlawfulness of his probation term had been confirmed by Division of Community Corrections officials (Sep. App. 80, dkt. #

10, ¶¶ 506-507), and, along with Defendant Nehring, had been negligent in violation of state law for failing to note and correct Mr. Sabo's unlawful probation term (Sep. App. 80, dkt. # 10, ¶ 509).

The parties stipulated to proceed before Magistrate Judge William E. Duffin. (Dkt ## 3,18.) The Defendants moved to dismiss the First Amended Complaint, and, on November 12, 2020, the district court dismissed all of Mr. Sabo's claims except those in paragraphs 506 and 507 of his First Amended Complaint. (App. 31, dkt. # 19, at 31.)

The court dismissed Mr. Sabo's Eighth and Fourteenth Amendment claims in paragraphs 504 and 505 against Erickson and Hanson for imposing the probation hold that kept Mr. Sabo in jail following his arrest on the basis of absolute quasi-judicial immunity. (App. 10-13, dkt. # 19, at 10-13.) Mr. Sabo does not ask this court to disturb that holding.

The court declined to dismiss Mr. Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson for not effecting his immediate release when the unlawfulness of his probation was

confirmed by Corrections officials, in paragraphs 506 and 507 of the

First Amended Complaint, on immunity grounds.  (App. 13-14, dkt.

# 19, at 13-14.)

The court dismissed Sabo's Eighth Amendment deliberate

indifference claim against Central Records Unit Defendants Hicks

and Haley for not identifying and correcting his unlawful probation

term after they learned that they had been letting many unlawful

probation terms pass uncorrected in 2004 and early 2005 because

they had been operating under a mistaken view of the law, in

paragraph 501 of the First Amended Complaint, on the ground that

Sabo had not alleged "that Haley or Hicks knew of any likely

problem specific to Sabo." (App. 16, dkt. # 19, at 16.) Sabo's

challenge to this decision is the central theme of his appeal.

Moving to the Division of Community Corrections field staff

Defendants, Erickson and Hanson, the district court dismissed

Sabo's claims that they had failed to perceive and remedy his

unlawful probation term when he first came under their jurisdiction,

in paragraphs 502 and 503 of the First Amended Complaint, on the

21

basis of qualified immunity, stating that there was no clearly established duty for probation agents to independently verify the lawfulness of the sentences of the offenders under their supervision. (App. 20, dkt. # 19, at 20.) Sabo does not challenge this determination on appeal.

Applying qualified immunity analysis to Sabo's claims under the Eighth and Fourth Amendment against Erickson and Hanson for not effecting his immediate release when the unlawfulness of his probation was confirmed by corrections officials, in paragraphs 506 and 507 of the First Amended Complaint, the court declined to dismiss these claims. (App. 24-25, dkt. # 19, at 24-25.) The court also rejected arguments that deliberate indifference had not been adequately alleged as to these claims, stating, "It is plausible that discovery will lead to evidence that supports the conclusion that Erickson or Hanson were deliberately indifferent by choosing to hold Sabo in custody pending the court amending the judgment of conviction." (App. 26, dkt. # 19, at 26.)

The court then dismissed all of the state law negligence claims on the basis of state law governmental immunity (App. 27-30, dkt. # 19, at 27-30.) Sabo does not challenge this result on appeal.

Mr. Sabo moved for reconsideration of the dismissal of the Eighth Amendment claims against Haley and Hicks for failing to act after they learned of the many unlawfully long probation terms they had permitted to pass uncorrected in 2004 and early 2005, and of the dismissal of the state law negligence claims. (Dkt. # 21.) That motion was denied. (App. 33-41, dkt. # 25.)

The remaining Defendants, Erickson and Hanson, moved for judgment on the pleadings on the surviving claims against them, relating to their failure to effect Mr. Sabo's immediate release when the unlawfulness of his probation term was confirmed by Corrections officials (dkt. # 30), and the court denied this motion the day after it was filed without waiting for a brief from Mr. Sabo. (App. 43-46, dkt. # 31).

The remaining Defendants then moved for summary judgment. (Dkt. # 32.) After submissions and counter-submissions

under the court's local rules for summary judgment motions, this

motion was granted. (App. 47-56, dkt. # 49.) The court concluded

that, even empowered by § 973.09(2m) Wis. Stats., probation officers

did not have a duty to act in contravention of a judgment of

conviction unless and until it was amended by the sentencing judge.

(App. 53-55, dkt. # 49, at 53-55.) Mr. Sabo urges this Court to reverse

this decision.

### SUMMARY OF ARGUMENT

When the Central Records Unit Defendants, Haley and Hicks,

learned that, in 2004 and early 2005, they had permitted many

unlawfully long terms of probation to pass through their hands

uncorrected, they exhibited unlawful deliberate indifference to these

unlawful sentences by doing nothing to correct them, in violation of

the Eighth Amendment. This led directly to John Sabo being treated

as if he were still on probation when he was arrested in December of

2017, and was a proximate cause of his incarceration on a probation

hold from his arrest until May, 2018. Because, in light of the

24

positions they occupied, they knew that it was likely that if they did not identify and correct the unlawful probation terms they had let pass the first time, nobody would, they had a constitutional duty under the Eighth Amendment to the injured offenders. The viability of Mr. Sabo's Eighth Amendment claim against them is not affected by the fact that they never took the trouble to learn the names of the offenders impacted by their application of a mistaken standard.

When the Division of Community Corrections field staff Defendants, Erickson and Hanson, learned that the term of probation to which Mr. Sabo had been sentenced, five years, was unlawfully long because the maximum available term was three years, Wis. Stat. § 973.09(2m) required them to treat Mr. Sabo as if he were not on probation and to immediately terminate his revocation proceedings and the probation hold that was keeping him in jail. Holding him in custody after that violated both his Eighth Amendment right to be free from cruel and unusual punishment in the form of unlawful incarceration due to deliberate indifference, because they knew they had no legal basis to hold him, and his

25

Fourth Amendment right to be free from unreasonable seizures,

because any reasonable suspicion that he was guilty of a revocable

violation of the terms of his probation evaporated when Hicks and

Haley learned that he had not been lawfully on probation when he

had been arrested.  Even if they could not correct his Judgment of

Conviction with an eraser and a pencil, as had been done in the

Central Records Unit, they had the discretionary authority to

discontinue his revocation proceeding, or, at the very least, to retract

their probation hold so he would not have to wait in jail for the

sentencing judge to amend the Judgment.

## ARGUMENT

### I.    The Standard of Review of a Rule 12(b)(6) Dismissal is *De Novo*.

This Court applies a *de novo* standard of review to a district

court's decision to grant a motion to dismiss for failure to state a

claim under Rule 12(b)(6). *Crescent Plaza Hotel Owner, L.P. v. Zurich

Am. Ins. Co.,* 20 F.4th 303, 307 (7th Cir. 2021).

26

To survive a Rule 12(b)(6) motion, a complaint need only

contain a short and plain statement showing that the plaintiff is

entitled to relief. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773,

776 (7th Cir. 2007). This Court must accept the factual allegations in

the complaint as true, and draw all reasonable inferences in favor of

the plaintiff. *Bilek v. Federal Insurance Co.*, 8 F.4th 581, 584 (7th Cir.

2021). A complaint will survive a Rule 12(b)(6) motion to dismiss if it

contains sufficient factual allegations to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."

*Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)(quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the requirements of notice pleading are minimal, "a

plaintiff can plead himself out of court by alleging facts which show

that he has no claim." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th

Cir.1995). That is essentially what the district court believed had

happened in this case.

## II.     The Standard of Review of a Summary Judgment Decision is *De Novo*.

This Court's review of a decision granting summary judgment

is *de novo*. *G. M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631,

636 (7th Cir. 2003).

Summary judgment is proper if the evidence of record shows

that there is no issue as to any material fact, and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden of establishing

the lack of any genuine issue of material fact is always upon the

movant.  *Outlaw v. Newkirk*, 259 Fed.3d 833, 837 (7th Cir. 2001).

The record must be examined with all factual disputes

resolved in favor of the nonmoving party.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986). The Court must observe the

"fundamental principle that at the summary judgment stage,

reasonable inferences should be drawn in favor of the nonmoving party." *Tolan v. Cotton,* 572 U.S. 650, 660 (2014).

"The maxims of summary judgment are familiar—no weighing the evidence, no credibility determinations, draw all non-speculative inferences in favor of the nonmovant—but they are more easily recited than applied." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020). In that case, this Court said that these precepts "define the outer limits of [a plaintiff's] right to 'the commonsense judgment of [her] community,' and to the generous latitude the court accords it." *Id.*, quoting *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). The resolution of cases through jury trials will continue to recede into history unless courts honor the words with which this Court finished its explication of the summary judgment standard in *Joll*: "[T]he court must try to focus on the most persuasive story possible on the non-movant's behalf." *Id.*, (citation omitted).

29

### III.    The Central Records Bureau Defendants: Haley and Hicks.

The Eighth Amendment prohibits punishments which, even though they are not physically tortuous, "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). One class of "unnecessary and wanton" wrongs, is comprised of those harms that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902–03 (7th Cir. 2016), citing *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001).[6]

The court below correctly understood Mr. Sabo's claims against Central Records Unit sentence reviewers Hicks and Haley.

---

[6] Mr. Sabo acknowledges that when Hicks and Haley originally reviewed his judgment of conviction, their error in failing to note the unlawfully long sentence was probably just negligence, not deliberate indifference to a known risk.

> Sabo alleges that Haley and Hicks acted with deliberate indifference when, after recognizing that they had a long been incorrectly reviewing the lawfulness of judgments, they failed to go back and review prior judgments or otherwise take remedial action. In other words, knowing that for years they had misunderstood how to calculate the maximum length of probationary sentences for felonies, they failed to review prior judgments to determine whether any included terms of probation that were unlawfully long.

> Thus, as alleged in the complaint, Haley and Hicks knew that it was essentially certain that, due to their misunderstanding of the law, many probationers were subject to unlawfully long sentences.

(App. 16, dkt. # 19 at 16.)[7]

The district court held that it was not actionably indifferent of

Hicks and Haley to have ignored the unlawful sentences of the

"many probationers" of which Mr. Sabo was one because "The

---

[7] Where the district court said, "In other words, knowing that for years they had misunderstood how to calculate the maximum length of probationary sentences for felonies, they failed to review prior judgments to *determine whether any* included terms of probation that were unlawfully long," (App. 16, dkt. # 19 at 16, emphasis supplied) it would be truer to the facts of this case to say ". . . they failed to review prior judgments to *identify the many particular judgments* that included terms of probation that were unlawfully long." They admitted that they knew there were many such judgments. (Sep. App. 70-71, dkt. # 10; ¶¶ 417, 419.)

problem with this theory is that there is no suggestion that Haley or

Hicks knew of any likely problem specific to Sabo." (*Id*.)

### A. This Case is not like Those Where the Plaintiff Relied Only upon a General Risk of Human Error.

The court saw this as case as analogous to cases where the

plaintiffs' allegations of deliberate indifference were premised on

nothing more than the truism that human error is ubiquitous in any

repetitive human task. It said:

> The court agrees with Judge Crabb, who held in a
> factually similar case where Haley was also named as a
> defendant, "Simply alleging that defendants were
> aware of the general possibility that prisoners'
> sentences may be inconsistent with Wisconsin law does
> not state a claim for deliberate indifference in violation
> of the Eighth Amendment." *Perrault v. Wisconsin*, No.
> 15-cv-144-bbc, 2016 U.S. Dist. LEXIS 2838, at *7-8 (W.D.
> Wis. Jan. 11, 2016) (citing *Butera v. Cottey*, 285 F.3d 601,
> 606 (7th Cir. 2002) (plaintiffs must demonstrate that
> defendants had "actual notice of a specific risk of
> serious harm so as to find [defendants] deliberately
> indifferent"); *James v. Milwaukee County*, 956 F.2d 696,
> 701 (7th Cir. 1992) (deliberate indifference claim cannot
> be predicated merely on knowing of general risks of
> violence in prison)).

(App. 16-17, dkt. # 19 at 16-17.)

The cases the court cited did not involve situations where defendants were absolutely certain that some particular group of persons would be subject to a particular injury of constitutional dimensions but were excused from liability for ignoring those injuries because they did not take the trouble to identify the specific victims by name. In *Perrault*, Judge Crabb said that the plaintiff had pointed to no more specific risk than, essentially, the knowledge that to err is human, in claiming that the defendants had failed to notice that the circuit judge's sentence was unlawful and correct his legal error. She wrote:

> Even if I were to conclude that prison administrators or prison record keepers had a constitutional obligation to identify and take some sort of action to correct a judge's unlawful sentencing order, I still would dismiss plaintiff's Eighth Amendment claim because he fails to allege that defendants had "actual knowledge of [a] substantial risk" that his sentence was unlawful. *Campbell v. Illinois Department of Corrections*, 907 F. Supp. 1173, 1179 (N.D. Ill. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). See also *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) ("To establish § 1983 liability in this context, a plaintiff must first demonstrate that a

33

prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted."). This "actual knowledge" standard requires a plaintiff to show that an official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that they "also dr[ew] the inference." *Farmer*, 511 U.S. at 837.

Plaintiff has done little more than allege that defendants were aware of a risk of unlawful sentences generally; not that they were aware of a specific risk that his sentence was unlawful. For example, plaintiff asserts that various defendants were aware of Wisconsin's sentencing laws and knew that illegal sentences often had to be corrected. However, it is not possible to infer from his allegations that defendants were aware of a substantial risk that the particular sentence in his case was illegal. Simply alleging that defendants were aware of the general possibility that prisoners' sentences may be inconsistent with Wisconsin law does not state a claim for deliberate indifference in violation of the Eighth Amendment. *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (plaintiffs must demonstrate that defendants had "actual notice of a specific risk of serious harm so as to find [defendants] deliberately indifferent"); *James v. Milwaukee County*, 956 F.2d 696, 701 (7th Cir. 1992) (deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in prison).

*Perrault v. State*, No. 15-CV-144-BBC, 2016 WL 126918, at *2–3 (W.D. Wis. Jan. 11, 2016), aff'd sub nom. *Perrault v. Wisconsin Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016).

In *Perrault,* the risk of which the defendants were aware was common to every single inmate sentenced to prison: the risk that the judge *might* get the sentence wrong. In *Sample v. Diecks*, cited by Judge Crabb, the Third Circuit explained why a general risk of error is not enough to implicate the 8th Amendment:

> The administration of a system of punishment entails an unavoidable risk of error. In the case of punishment through imprisonment, those errors may result in harms to inmates. Elimination of the risk of error in many instances would be either literally impossible or unfeasible because prohibitively costly. Thus unforeseeable accidents or inadvertent mistakes may occur during imprisonment, resulting in harms to inmates. Such accidents or mistakes are a necessary cost of any prison system.

*Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989).

The knowledge that is an element of deliberate indifference is knowledge of the facts that demonstrate a particular risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)("[T]he official must both

35

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") Knowledge of the law is on a different footing, as every citizen is presumed to know the law. *Georgia v. Public Resource Org, Inc.*, 140 S. Ct. 1498, 1507 (2020); *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 827 (7th Cir. 2020); *Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 732 F.3d 755, 765 (7th Cir. 2013); *United States v. Dobek*, 789 F.3d 698, 700 (7th Cir. 2015). In this case, the Defendants had actual knowledge that many of the probationers whose sentences they had checked for legality during a limited period of time when, as they belatedly realized, they had been applying an incorrect criterion, would serve unlawfully long sentences. (Dkt. # 13-1, Deposition of Sheri Hicks, 31:16-19.) They knew of the specific risk, and they knew the particular group of probationers who were subject to that risk. They ought not be permitted to evade liability because they failed to look back into the pool of probationers whom they knew they had subjected to erroneous review to identify the specific victims of their lapse. That group included only persons

who had been placed on probation during 2004 and in early 2005,

before they discovered their error. (Sep. App. 70, dkt. # 10, ¶ 417.)

> **B.    Deliberate indifference to a risk of constitutional injury is not rendered lawful by a public official's decision not to ascertain the identities of those who will be injured.**

The *Sample* court concluded:

> A prisoner held beyond his term need not demonstrate that a prison official's role in the prisoner's unwarranted detention amounted to a "knowing willingness" that the unjustified detention would occur, *Whitley* [*v. Albers*], 475 U.S. [312,] at 321, 106 S.Ct. [1078,] at 1085.

*Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989). The court

elaborated:

> To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's

> response to the problem and the infliction of the
> unjustified detention.
>
> *****
>
> Among the circumstances relevant to a determination of
> whether the requisite attitude was present are the scope
> of the official's duties and the role he or she has played
> in the everyday life of the prison. . . . if a prison official
> knows that, given his or her job description or the role
> he or she has assumed in the administration of the
> prison, a sentence calculation problem will not likely be
> resolved unless he or she addresses it or refers it to
> others, it is far more likely that the requisite attitude
> will be present.

*Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989).

In that case, the inmate won because he had proof that the

defendant knew about his problem and did nothing, although it was

his job. Here, where the Plaintiff is one of group of probationers

whose sentences Defendants Hicks and Haley knew had been

analyzed using mistaken criteria, the same result should apply.

Given that Hicks and Haley knew of the previous error, knew of the

likelihood of probationers serving illegally long sentences, and knew

the particular batch of probationers that contained those who had

38

been affected by the mistake, the only thing that kept them from learning the identity of each probationer who suffered a constitutional violation was willful blindness, a refusal to look back and correct the error that they knew that they had made to the injury of a defined group of people.

Consider an analogous situation where a prison doctor learned, after administering diagnostic tests for a particular illness – an illness quite serious but curable if diagnosed and treated early -- to a group of inmates over a long period of time, that a batch of those tests administered by her office over a limited time frame had been contaminated and rendered ineffective. Upon gaining that information, she would not know exactly which of her patients were prone to contracting the illness and not being timely treated for it, but she would know that some patients whom she had tested during the period of time before she learned of the contamination were at significantly elevated risk compared to those who got good tests (and, if they needed it, timely treatment). Surely she could not escape liability by deliberately turning a blind eye and failing to

39

determine the names of those who got the bad tests from her records

as a first step toward fixing the problem. See, e.g., *Perez v. Fenoglio*,

792 F.3d 768, 781 (7th Cir. 2015)("deliberate indifference may be

found where an official knows about unconstitutional conduct and

facilitates, approves, condones, or 'turn[s] a blind eye' to

it.")(quoting *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir.1996)).

> **1.    All of the cases where liability is premised on a general policy that embodies deliberate indifference toward constitutional injuries contradict the holding of the court below.**

The idea that deliberate indifference to constitutional injuries

suffered by some meaningful proportion (or all) of the members of a

precisely identifiable group is not actionable if the defendant did not

know the identities of the individual persons who stood to be

injured is in tension with the idea expressed in the *Monell* cases, that

liability can be established through a policy of deliberate

indifference. Necessarily, such a policy is made before the identities

of any victims of it can be known, yet many cases recognize that

liability can arise from a policy of deliberate indifference.

*Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002), also cited by Judge

Crabb in *Perrault*, was a case of inmate-on-inmate assault. One of the

plaintiff's theories there was that the sheriff was deliberately

indifferent to the risk of sexual assault in a particular cell block of

the Marion County, Indiana, jail. The court rejected that argument,

not because deliberate indifference to a risk of injury to an identified

group -- in that case, the inmates in the cell block where the Sheriff

housed all the violent inmates -- would not be actionable if it had

caused injury to the plaintiff, but because the plaintiff's evidence fell

short of demonstrating the requisite deliberate indifference. *Id.*, 285

F.3d at 608.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) where the

Court held that inadequacy of police training may serve as basis for

§ 1983 municipal liability where failure to train amounts to

deliberate indifference to rights of persons with whom police come

into contact, there was no requirement that the policy-makers who

were deliberately indifferent had to know the identities of the

persons who would be injured in order for liability to attach. In

41

*Walters v. Village of Oak Lawn*, 548 F. Supp. 417, 420 (N.D. Ill. 1982) the court held that "the existence of the type of detention room in which Charles Walters was placed sufficiently demonstrates a general policy of deliberate indifference on the part of the Village of Oak Lawn and the Oak Lawn Police Department." If the law had required the Village to know the identities of the persons who would be subjected to unlawful conditions of confinement in order for its deliberate indifference to be actionable, this claim would have been dismissed.

In a case involving unlawful detention, this Court has said:

. . . in order to prevail, Luck must point to evidence tending to show that his continuing detention without a probable cause hearing resulted from Sheriff Rovenstine's chosen course of action. Taking the facts most favorably to Luck, as we must, we believe he has met this burden. Sheriff Rovenstine's own deposition testimony supports the conclusion that two different monitoring policies existed: one for detainees his own officers brought in, and another for detainees brought in by outside agencies. Furthermore, since the policy with respect to the latter group of detainees was to delegate responsibility for monitoring to either the courts, the other agency, or the prosecutor, it was in effect the kind of policy of deliberate indifference we criticized in

*Armstrong* [*v. Squadrito*,] 152 F. 3d [564,] at 579 [(7th Cir.1998)]. On the basis of this record, a jury could conclude that Sheriff Rovenstine did not merely overlook Luck, but instead chose to pursue a deliberate course of action that gave greater weight to avoiding conflict with other agencies than it did to the preservation of detainees' constitutional rights. A policy under which the sheriff holds onto a suspect until the arresting agency tells him to release the person is in terms a violation of the Fourth Amendment. Luck's contention that this was Sheriff Rovenstine's policy is therefore sufficient to support an official capacity claim against the sheriff.

*Luck v. Rovenstine*, 168 F.3d 323, 326–27 (7th Cir. 1999)(emphasis added).

When Sheriff Rovenstine deliberately chose his policy, he could not have known the identities of the individuals who were going to be injured by it, but he did know that a number of inmates in a well-defined group – "detainees brought in by outside agencies" – would be injured and that was sufficient to establish a constitutional violation.

In the case cited in the passage from *Luck* just quoted, *Armstrong v. Squadrito*, 152 F.3d 564, 579 (7th Cir. 1998), this Court

43

denied summary judgment to the defense on a claim involving the jail's policy of holding inmates who came in on warrants until the circuit judge asked that they be brought to court, which the circuit court called a "will-call system." This Court said, "In this claim Armstrong presents facts establishing that the jail had either a policy or custom of refusing to accept complaint forms from detainees requesting information on their will call status." *Armstrong v. Squadrito*, 152 F.3d 564, 579 (7th Cir. 1998). It concluded, "The policy or custom, therefore, facially displays a conscious disregard of a known danger." *Id*. Again, the actionable deliberate indifference occurred at a time when the officials who made the policy could not have known the identities of those who would be injured.

Haley and Hicks deliberately chose a policy – once they learned of their mistake, they chose to leave those judgments of conviction of probationers from the months when they knew they had been applying the wrong criteria unreviewed and uncorrected – knowing that it would result in many probationers in that group serving unlawfully long sentences. They should not escape liability

because, due to the very policy they adopted, they never learned the

precise identities of the persons who had been injured by their

conduct.

> **C.  The Central Records Unit Defendants, Whose**
> **Jobs Required them to Correct Sentencing**
> **Errors, Were Among Those Who Could Violate**
> **Offenders' Constitutional Rights By Deliberate**
> **Indifference to a Serious Risk of Unlawful**
> **Deprivations of Liberty.**

Mr. Sabo raised the arguments set forth above in a Motion for

Reconsideration. (Dkt. # 21.) The district court denied that motion,

for a reason it had not previously mentioned:

> [T]he distinction here is that Hicks and Haley did not
> have a constitutional duty to double-check that circuit
> judges imposed lawful sentences. Although the
> Wisconsin Department of Corrections chose to perform
> that sort of verification as a matter of policy, and
> assigned the task to Hicks and Haley, that did not create
> a constitutional duty for Hicks and Haley to seek out
> and correct judges' sentencing errors.

(App. 39, dkt. # 25, at 7.)

The court expanded on this, saying, "That Wisconsin did

more than was required and attempted to identify and correct the

45

sorts of errors that permeate the criminal justice system did not then

create a constitutional cause of action when those actions fell short."

(App. 41, dkt. # 25, at 9.)

The question of who does, and who does not, have a

constitutional duty to take action upon learning that there is a

significant risk that an offender is serving an unlawful sentence was

considered by Judge Griesbach in *Watford v. Miller*, No. 09-C-244,

2010 WL 1257812, at *4 (E.D. Wis. Mar. 26, 2010). Relying heavily on

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989), he wrote:

> In *Sample,* the Court observed that "if a prison official
> knows that, given his or her job description or the role
> he or she has assumed in the administration of the
> prison, a sentence calculation problem will not likely be
> resolved unless he or she addresses it or refers it to
> others, it is far more likely that the requisite attitude
> [deliberate indifference] will be present." 885 F.2d at
> 1110. Here, I conclude that a jury could conclude from
> the evidence that each of the defendants would have
> known that if they did not address Watford's problem,
> or at least refer him to the person who could, it would
> not be resolved.

*Watford v. Miller*, No. 09-C-244, 2010 WL 1257812, at *7 (E.D. Wis.

Mar. 26, 2010).

Hicks and Haley knew that it was their job to correct unlawful sentences imposed by circuit judges, and that they were the first actors in all of the sentence corrections the DOC implemented – meaning that, in those cases, earlier safeguards in the system, like prosecutors or the offenders' criminal defense lawyers having recognized the unlawfulness of the sentence and moved to amend the judgment of conviction, had failed. They knew that, if they did not address the unlawful sentences of the offenders whose sentences they had reviewed under an incorrect standard in 2004-2005, nobody else was likely to do so. That was the source of their constitutional duty. Their inaction was a deliberate disregard of a known substantial risk of harm. See, e.g. *Combs v. Pederson*, No. 008-CV-482-SLC, 2009 WL 982600, at \*3 (W.D. Wis. Apr. 10, 2009), aff'd sub nom. *Combs v. Pedersen*, 351 F. App'x 130 (7th Cir. 2009)("To show that Pederson was deliberately indifferent, plaintiff would have to show that he knowingly disregarded a substantial risk of harm.")

In the seminal cases where over-retention was first found to
violate the Eighth Amendment, the court observed that deliberate
indifference "has been demonstrated in those cases where prison
officials were put on notice and then simply refused to investigate a
prisoner's claim of sentence miscalculation." *Moore v. Tartler*, 986
F.2d 682, 686 (3d Cir. 1993); see also, *Haygood v. Younger*, 769 F.2d
1350 (9th Cir. 1985).

## IV.  The Community Corrections Defendants: Erickson and Hanson

### A.  Absolute Immunity for Recommending Incarceration Pending a Revocation Decision.

The First Amended Complaint alleged, at ¶¶ 504-505, that
Defendants Erickson and Hanson had violated the Eighth and
Fourteenth Amendments, respectively, by, when Mr. Sabo was
arrested, initially "recommending detention of the Plaintiff at the
Racine County Jail at a time when he should have completed his
probation." (Sep. App. 79, dkt. # 10, ¶¶ 504-505.) The court below
dismissed these claims on the basis of absolute quasi-judicial

immunity. (App. 10-14, Decision and Order, dkt. # 19, 10-14.) The
Plaintiff does not ask this court to reverse this holding.

> ### B.  Liability for Not Directing Mr. Sabo's Release
> when Erickson and Hanson Learned He was not
> Lawfully on Probation.

The court below reached a different result as to the immunity
of Defendants Erickson and Hanson for not immediately releasing
Mr. Sabo once they learned his incarceration was unlawful because
there was no lawful probation to revoke. The court said, "At this
stage of the proceedings, and based on the record presently before
the court, Erickson and Hanson have not demonstrated that
continuing the hold after they recognized that Sabo's probation term
was unlawfully long was a quasi-judicial act for which they enjoy
absolute immunity." (A-14, dkt. # 19, at 14.)

This was a short-lived triumph for Mr. Sabo, though, because
the court later dismissed these claims on summary judgment. (App.
47-56, dkt. # 49.)

          **1.     Despite the Position of the Department of Corrections' Legal Counsel, the Unlawful Judgment of Conviction was Already Commuted by Statute when Erickson and Hanson Made Their Decisions.**

When Erickson and Hanson were embarked upon the process

of trying to revoke Mr. Sabo's probation, Wis. Stat. § 973.09(2m)

provided:

> If a court imposes a term of probation in excess of the maximum authorized by statute, the excess is void and the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings.

The plain meaning of this statute is that everyone who

encounters a person who is on probation only by virtue of "a term of

probation in excess of the maximum authorized by statute" is

required to treat that person as if the term of probation to which

they had been sentenced was "the maximum term authorized by

statute." That is the only thing that "the term of probation is valid

only to the extent of the maximum term authorized by statute," can

mean. It does not say, "<u>On motion of the defendant</u>, the term of

probation ~~is valid only to the extent of~~ <u>shall be commuted by the</u>
<u>sentencing court to</u> the maximum term authorized by statute."

The legislature removed any doubt as to this by adding the
final sentence: "The term is commuted without further
proceedings." The legislature did not say the term *shall be* commuted
*upon* further proceedings; it said "The term *is* commuted *without*
further proceedings." Any argument that further proceedings were
required before Defendants Erickson and Hanson could act on their
knowledge that Mr. Sabo's sentence was invalid ignores this
sentence of the statute.

Wisconsin's courts have recognized the force of this language,
albeit saying it would be "the better practice to have the record
reflect a judgment of conviction that correctly states the term" of
probation. *State v. Oglesby*, 2006 WI App 95, 292 Wis. 2d 716, 724,
715 N.W.2d 727, 731. The reason this is the better practice is obvious
– if the correct term of probation is reflected in an amended
judgment of conviction, Department of Corrections functionaries do
not have to perceive and act on the unlawfulness of the original term

51

every time they make a decision that depends on an offender's term of probation.

### 2. Even if Erickson and Hanson were Required to Enforce the Judgment of Conviction, They were Not Required to Hold Mr. Sabo In Custody.

The court below viewed Mr. Sabo's argument against summary judgment as one that would have required Erickson and Hanson to "disregard or commute an unambiguous sentence." (A-53, dkt. # 49, at 7.) As noted above, Mr. Sabo thinks that it was their statutory duty to disregard the unlawful portion of Mr. Sabo's probation term. The court noted that it was then "the department's policy that, until the court amends the judgment of conviction, the department has to enforce the sentence imposed by the court." (A-53-54, dkt. # 49, at 7-8.) Mr. Sabo thinks this policy was wrong, and directly contrary to Wis. Stat. § 973.09(2m) and did not override the constitutional duty to act.

But even if they had to treat Mr. Sabo as a probationer until the sentencing court ruled otherwise, it was the discretionary

52

decisions they had made that were keeping him behind bars, and these could be reconsidered and reversed, given what they had learned, even if they could not discharge Mr. Sabo from probation. Those decisions were a) to initiate proceedings to revoke Mr. Sabo's probation, and b) to direct that he be held in custody pending the outcome of the revocation proceedings.  If they had just revisited the second of these decisions and exercised their discretion to direct Mr. Sabo's release from custody, even without terminating the revocation proceeding, it would have significantly diminished the unlawful deprivation of Mr. Sabo's liberty to which they then knew he was being subjected.

The district court was having none of this. It held that, until the judgment of conviction was actually amended by the circuit court to alter Mr. Sabo's status as a probationer as of the date of his arrest, Erickson and Hanson were required not just to treat him as a person on probation, but as a person who was going to be on probation until he either served out his unlawful five-year term of

probation or he was revoked off probation and re-incarcerated. The

court said:

> But for Erickson or Hanson to have released Sabo
> would have required them to disregard the judgment.
> Before learning of the error, they had determined that
> detention and revocation were appropriate. And
> Erickson was told that, unless the judge acts to correct
> the sentence, the department must enforce the sentence
> imposed. (ECF No. 35-1 at 1.) Therefore, enforcing the
> sentence meant holding Sabo in custody unless and
> until the judge amended the sentence.

(App. 54, dkt # 49, 8.)

This was illogical.  The erroneous Judgment of Conviction

said that Mr. Sabo had been on probation as of the date of his Racine

County arrest on December 21, 2017, so enforcing the sentence of the

circuit court meant treating Mr. Sabo within the bounds of their

authority as to probationers.  But the Judgment of Conviction did

not *require* that Mr. Sabo's probation be revoked under any

particular circumstance, and if revocation proceedings were

commenced it did not require that he be *incarcerated* pending their

outcome. These were discretionary decisions by Defendants

54

Erickson and Hanson, and nothing in the Judgment of Conviction

required them to turn a blind eye to the fact that the circuit judge

had been asked to amend his illegal sentence and was almost certain

to do so, since there was no room for doubt about its impropriety.

"A state officer is deliberately indifferent when he does nothing, or

when he takes action that is so ineffectual under the circumstances

that deliberate indifference can be inferred." *Figgs v. Dawson*, 829

F.3d 895, 903 (7th Cir. 2016). A reasonable trier of fact could

conclude that Erickson and Hanson were deliberately indifferent to

the prospect of Mr. Sabo being unlawfully incarcerated until the

sentencing judge amended the Judgment of Conviction, since the

action they took was completely ineffective to get him out of jail

during that period.

The district court was concerned about the downstream effect

of a holding in favor of Mr. Sabo:

> Not merely permitting but requiring (at the risk of
> personal liability) low-level corrections officials to
> disregard a court's judgment of conviction when they
> believe the judgment is unlawful is an untenable
> proposition. It is easy to envision a wide variety of

instances where corrections employees and courts may disagree as to the lawfulness of a sentence.

(App. 55, dkt. # 49, at 9.)

Magistrate Judge Duffin was correct in thinking that one can construct hypothetical scenarios in which the lawfulness or unlawfulness of a sentence might not be clear cut. What if, for example, a statute set the maximum term of probation for a certain offense at "the length of time required for the protection of the public"? Reasonable persons could differ about the correct application of such subjective criteria, and, in such cases, as he pointed out, the courts should hold the trump cards and the remedy for a judicial mistake should be an appeal. But this doesn't mean that all issues as to the legality of a sentence are fuzzy – some are crystal clear, as the one in the present case was. A driver on a road with a sixty-mile-an-hour speed limit does not, after all, get to say that he was uncertain of the speed limit until the matter was addressed by a court. Sometimes the law is clear beyond the shadow of a doubt, and, at least in those cases, a probation agent who knows

beyond the shadow of a doubt that a person he or she has the power
to release is unlawfully incarcerated is deliberately indifferent to a
constitutional injury if all he or she does is to pass the buck.

Human lives are short and every day of liberty is a precious
commodity. In *United States v. Thompson*, 484 F.3d 877, 884 (7th Cir.
2007), a criminal case, this Court decided on the very day the case
was argued that there was no evidence to support the defendant's
conviction and ordered her immediate release from prison. The case
was argued in the morning and she was released that afternoon.[8]
That was a simple application of the straightforward logic that
should have spurred Defendants Erickson and Hanson into
immediately releasing Mr. Sabo.  The Court knew that Ms.
Thompson was unlawfully incarcerated and that it had the power to
secure her immediate release, and it did so.  Defendants Erickson
and Hanson, once they received confirmation that Mr. Sabo's
sentence was unlawful, knew that he was unlawfully incarcerated

---

[8] https://www.twincities.com/2007/04/05/ex-state-worker-freed-from-
prison-by-federal-appeals-court/, last accessed June 2, 2022.

and that they had the power to secure her immediate release. They

did not do so. Rather, they passed the ball back to Mr. Sabo's

defense lawyer and to the sentencing judge, thus guaranteeing a not-

insignificant delay in Mr. Sabo's release from custody. That was

"action that is so ineffectual under the circumstances that deliberate

indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th

Cir. 2016).

### C.    Erickson and Hanson Violated the Fourth Amendment.

This conduct violated not only the Eighth Amendment, but

the Fourth Amendment, because as soon as those two Defendants

were on notice that Mr. Sabo's probation was void, their continued

imprisonment of him became an unreasonable seizure.

The "seizure of a probationer need not be supported by

probable cause to pass constitutional muster." *Hoeft v. Anderson*, No.

09-cv-138, 2010 WL 2720002, at *3 (W.D. Wis. July 6, 2010). In *Lafaive

v. City of Waukesha*, No. 21-CV-0486-BHL, 2021 WL 1984870, at *2

(E.D. Wis. May 18, 2021), the court applied the same standard to the

58

seizure of a probationer as is applicable to a parolee, and noted, "the seizure of a parolee 'based on only reasonable suspicion' that the parolee has violated a term of his mandatory supervised release agreement does not violate the Fourth Amendment." *Id.*, quoting *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003).

"Because reasonableness is an objective test, a defendant's subjective state of mind is irrelevant to a court's Fourth Amendment analysis." *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020). The Fourth Amendment's requirement that seizures be reasonable not only prohibits the unreasonable initial restraint of a person's liberty, but requires that any restraint of physical liberty be terminated once it becomes unreasonable. *Rodriguez v. United States*, 575 U.S. 348 (2015).

Once Ms. Erickson and Ms. Hanson were informed that John Sabo's probation had been void at the time of the asserted probation violation, they lacked any reasonable suspicion that he had violated any term of his probation, and their continued detention of him became unreasonable.

## **CONCLUSION**

This Court should reverse the district court's decision to dismiss Mr. Sabo's claims asserted in paragraph 501 of the First Amended Complaint that Defendants Hicks and Haley were deliberately indifferent to his unlawfully long term of probation. It should also reverse the district court's decision to grant summary judgment to Defendants Erickson and Hanson on Mr. Sabo's claims in paragraphs 506 and 507 of the First Amended Complaint alleging that Defendants Erickson and Hanson violated his Eighth and Fourth Amendment rights by not immediately terminating their revocation proceeding or at least quashing their probation hold and effecting Mr. Sabo's release once the unlawfulness of his probation term had been confirmed by the Division of Community Corrections.

Dated this Tuesday, June 07, 2022.

Respectfully submitted,

John Sabo,

60

Plaintiff–Appellant,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
      Jeff Scott Olson
      (*Counsel of Record*)
      State Bar No. 1016284
      131 W. Wilson Street, Suite 1200
      Madison, WI 53703
      Phone:     608 283 6001
      Facsimile:  608 283 0945
      e-mail:    jsolson@scofflaw.com

/s/Jeff Scott Olson

_____

JEFF SCOTT OLSON
Attorneys for Plaintiff-Appellant

## Rule 32(a)(7) CERTIFICATION

This brief complies with the type-volume limitation of Rule 32(a)(7) inasmuch as it does not exceed 14,000 words, from the Jurisdictional Statement through the Conclusion.  The length of this brief is 11,141 words.

Dated this Tuesday, June 07, 2022.

/s/Jeff Scott Olson

_____

Jeff Scott Olson

## FORMER CIRCUIT RULE 31(e) CERTIFICATE

The undersigned counsel of record hereby certifies as follows:

1.    This brief has been reproduced digitally in non-scanned pdf format and uploaded to the Court's website.

/s/Jeff Scott Olson

_____

Jeff Scott Olson

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, June 07, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Jeff Scott Olson

_____

Jeff Scott Olson

Appeal No. 21-3332

# In the
# United States Court of Appeals
## For the Seventh Circuit
### Chicago, Illinois  60604

JOHN SABO,

      Plaintiff – Appellant,

          v.

MEGAN ERICKSON, et al.,

      Defendants – Appellees.

On Appeal from the United States District Court
For the Eastern District of Wisconsin,
The Honorable Magistrate Judge William E. Duffin Presiding,
District Court Case No: 2:20-cv-00718-WED

**Short Appendix of Plaintiff–Appellant**

Jeff Scott Olson
THE JEFF SCOTT OLSON LAW FIRM, S.C.
131 West Wilson St., Ste. 1200
Madison, WI 53703
608-283-6001
jsolson@scofflaw.com

*Counsel of Record for Plaintiff-Appellant*

**STATEMENT THAT ALL REQUIRED MATERIALS ARE IN APPENDIX**

It is hereby certified that the Short Appendix and the Separate appendix, between them, include all of the materials required by Circuit Court Rule 30 (a) and (b).

/s/Jeff Scott Olson

_____

Jeff Scott Olson

**CONTENTS OF SHORT APPENDIX**

| Record Item | Page |
|---|---|
| Decision and Order on Motion to Dismiss First Amended Complaint | 1 |
| Decision and Order on Motion for Reconsideration | 33 |
| Decision and Order on Defendants' Motion For Judgment on the Pleadings | 43 |
| Decision and Order Granting Motion for Summary Judgment Of Remaining Defendants Erickson and Hanson | 47 |
| Judgment | 57 |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN SABO,

                    Plaintiff,

          v.                                    Case No. 20-CV-718

SHERI HICKS, et al.,

                    Defendants.

# DECISION AND ORDER

1.  **Facts and Procedural History**

It is undisputed that a Fond du Lac county circuit court judge sentenced John Sabo to a term of probation in excess of the statutory maximum. (ECF No. 16 at 1.) The judge, of course, is immune from liability for his error, *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 290 (1991), and Sabo does not allege otherwise. Rather, Sabo alleges that various employees of the Department of Corrections are liable for not having recognized and corrected the judge's error sooner than they did.

According to the amended complaint that Sabo filed in this court, he was sentenced on November 30, 2004, by the Fond du Lac County Circuit Court to three years in prison and two years on extended supervision. (ECF No. 10, ¶¶ 401-02.) The court

App 001

stayed that sentence and placed Sabo on probation for five years. (ECF No. 10, ¶ 402.) However, under the law in force at the time of the crime, the maximum term of probation the court could impose was three years. (ECF No. 10, ¶ 405.) Because the court ordered Sabo's sentence to run consecutively to any other sentence, Sabo did not begin serving his sentence until July 20, 2014. (ECF No. 10, ¶ 423.)

Debra Haley and Sheri Hicks were employees of the Wisconsin Department of Corrections' Central Records Bureau who, at the time of Sabo's sentence, reviewed each judgment of conviction of people placed on probation. (ECF No. 10, ¶ 407.) If either found that a probation term ordered for a particular probationer was unlawfully long, she would cross out the unlawful probation term, write in the maximum lawful term, make two copies of the judgment of conviction, retain one copy with the Central Records Bureau, and send the other copy to the probationer's supervising probation agent. (ECF No. 10, ¶¶ 412-15.) At the time Sabo was sentenced to probation, Haley and Hicks misunderstood how to calculate the maximum length of probationary sentences for felonies. (ECF No. 10, ¶ 417.) When they learned of their misunderstanding in 2005, they did not go back and review the judgments that they had previously processed to determine whether any of them were unlawfully long. (ECF No. 10, ¶ 420.)

Sabo's probation, having commenced on July 30, 2014, should have concluded three years later, in July of 2017. (ECF No. 10, ¶¶ 423-24.)

On December 21, 2017, Sabo was arrested and charged with a misdemeanor. (ECF No. 10, ¶ 445.) Although the court in the misdemeanor action had granted him release on a signature bond, Sabo remained in custody pursuant to a probation hold. (ECF No. 10, ¶¶ 445-47.) Sabo's supervising probation officer, Megan Erickson, and her supervisor, Barb Hanson, recommended that Sabo's probation be revoked and that he remain in custody pending revocation. (ECF No. 10, ¶ 447-48.)

While incarcerated Sabo learned that his probation sentence was unlawfully long. (ECF No. 10, ¶ 454.) He attempted to contact Erickson, but she refused to come see him. (ECF No. 10, ¶ 455.) Sabo's fiancé also attempted to contact Erickson, but Erickson never returned her calls. (ECF No. 10, ¶ 456.) It was not until April 13, 2018, in response to an inquiry from Sabo's attorney, that Erickson confirmed that the maximum term of probation to which Sabo could have been sentenced was three years. (ECF No. 10, ¶ 458.) After contacting Advanced Corrections Sentencing Associate Janelle Nehring and confirming that the maximum term of probation was three years, Erickson advised Sabo's attorney to petition the court to correct the sentence. (ECF No. 10, ¶¶ 457-60.) Sabo remained in custody until May 3, 2018. (ECF No. 10, ¶ 460.)

Sabo alleges that, by subjecting him to an unlawfully long term of probation and holding him in custody for a portion of that time, the defendants violated his constitutional rights regarding due process, unlawful seizure, and cruel and unusual

punishment. (ECF No. 10, ¶¶ 501-07.) He also alleges that the defendants were negligent.

(ECF No. 10, ¶¶ 508-09.)

Specifically, Sabo alleges that Hicks and Haley

- violated his "right to be free from cruel and unusual punishment, in violation of Eight [sic] Amendment to the United States Constitution, and deprived [him] of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when, as a result of their deliberate indifference they failed to take any steps to correct his patently illegally long term of probation, after they realized in 2005, that they had incorrectly analyzed judgments of conviction in 2004, resulting in his spending 291 days being supervised beyond the legal termination of his period of probation, 133 days of which he was held in jail" (ECF No. 10, ¶ 501); and

- "were negligent in failing to ascertain and/or to take steps to correct the patent illegality of John Sabo's term of probation" (ECF No. 10, ¶ 509).

He alleges that Erickson and Hanson

- violated his "right to be free from cruel and unusual punishment, in violation of Eight [sic] Amendment to the United States Constitution, as a result of their deliberate indifference, when they restrained his liberty by continuing to limit and supervise his activities as conditions of probation, during a period of some 291 days beyond the date at which the law required his probation to terminate" (ECF No. 10, ¶ 502);

- violated his "right to be free from cruel and unusual punishment, in violation of the Eight [sic] Amendment to the United States Constitution" "[b]y recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation" (ECF No. 10, ¶ 504);

- deprived him "of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution" "[b]y unlawfully recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation" (ECF No. 10, ¶ 505);

- "exhibited deliberate indifference and violated [his] right to be free from cruel and unusual punishment, in violation of the Eight [sic] Amendment to the

4

United States Constitution" "[b]y failing to take steps to free [him] from detention at the Racine County Jail after the date on which they were notified that his term of probation was unlawfully long" (ECF No. 10, ¶ 506); and

- "effected an objectively unreasonable seizure of Mr. Sabo, in violation of the Fourth Amendment to the United States Constitution" "[b]y failing to take steps to free [him] from detention at the Racine County Jail after the date on which they were notified that his term of probation was unlawfully long" (ECF No. 10, ¶ 507).

Sabo also alleges that Hicks, Erickson, and Hanson deprived him "of his liberty without due process of law, in violation of Fourteenth Amendment to the United States Constitution, when they restrained [his] liberty, by continuing to limit and supervise his activities as conditions of probation, during a period of some 291 days beyond the date at which the law required probation to terminate." (ECF No. 10 at ¶ 503.)

Finally, he alleges that Erickson, Hanson, and Nehring "were negligent in failing to ascertain and/or to take steps to correct the patent illegality of [his] term of probation." (ECF No. 10, ¶ 509.)

All defendants have moved to dismiss the amended complaint (ECF Nos. 6, 11, 14; *see also* ECF No. 7 (brief in support)), although they have done so in a convoluted way. Hicks, Erickson, Hanson, and Nehring initially moved to dismiss the complaint on July 29, 2020. (ECF No. 6.) Accompanying that motion was a brief in support. (ECF No. 7.) On August 17, 2020, Sabo filed an amended complaint adding Debra Haley as a defendant (ECF No. 10), mooting the defendants' motion to dismiss. The following day, Erickson, Hanson, Hicks, and Nehring filed a renewed motion to dismiss. (ECF No. 11.) They did

not file a new brief but instead relied on their prior brief. (ECF No. 11.) Sabo responded to the renewed motion to dismiss on September 8, 2020. (ECF No. 12.) On September 22, 2020, Haley filed a document captioned, "Defendant Debra Haley's Motion Joining Co-Defendants' Motion to Dismiss," but docketed it as "Motion to Dismiss by All Defendants." (ECF No. 14.) In her motion Haley asserts that "Plaintiff's claims against Defendant Debra Haley are the same as those against Defendant Hicks" and, therefore, she "joins in, and incorporates by reference, all of Defendant Hicks's arguments for dismissal of the Amended Complaint." (ECF No. 14.)

If Sabo disagreed as to the similarity of his claims against Haley and Hicks or had any arguments specific to Haley, he had 21 days in which to respond to Haley's motion. *See* Civ. L.R. 7(b). He has not done so. On September 22, 2020, the defendants submitted a reply in support of their motions to dismiss. (ECF No. 16.)

Although all parties to the initial complaint consented to the full jurisdiction of this court (ECF No. 3, 8), Haley failed to timely file her own consent form. Following a reminder from the Clerk, Haley has now consented, and the defendants' motions are ready for resolution.

## 2. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 3.  Analysis

#### 3.1. Expiration of Sentence

Hicks, Haley, Erickson, and Hanson argue that Sabo's claims fail because he was not held in custody past his sentence expiration date. They argue that the Department of Corrections is required to keep a person in custody until the expiration of his sentence. Thus, Sabo's claims fail because he does not allege that his sentence expired before he was released from custody. (ECF No. 7 at 7-8 (quoting *Stein v. Ryan*, 662 F.3d 1114, 1120 (9th Cir. 2011); *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085, at *9 (E.D. Wis. Jan. 13, 2020)).) Rather, Sabo was released promptly after the circuit court amended the judgment of conviction.

In *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085 (E.D. Wis. Jan. 13, 2020), Williams had been sentenced to an impermissibly long term of extended supervision. He sued certain employees of the Department of Corrections for having been

detained after his extended supervision should have expired. The court granted the defendants' motion for summary judgment, holding that, until the court amended the judgment of conviction, the defendants were obligated to hold Williams in custody. Once the amended judgment reached Williams's supervising agent, she immediately released Williams from custody. The court held that no reasonable finder of fact could conclude that the defendants acted with deliberate indifference.

As indicated, *Williams* was before the court on a motion for summary judgment. Thus, the court was assessing the sufficiency of the evidence. On a motion to dismiss, the court is assessing the sufficiency of the complaint's allegations. Moreover, Williams failed to respond to the defendants' proposed findings of fact, resulting in the court deeming all of those facts admitted.[1] *Williams*, 2020 U.S. Dist. LEXIS 5085, at *2 n.2. Consequently, the court accepted that the Department of Corrections lacked any authority to essentially shorten Williams's sentence without first having the court amend the judgment of conviction.

However, Sabo alleges that Haley and Hicks were assigned the responsibility of reviewing probationary judgments for compliance with the law and were required to correct unlawfully long sentences. Moreover, Sabo notes that, pursuant to Wis. Stat.

---

[1] Sabo also argues that the court should afford little weight to *Williams* because it was prosecuted by "a prison inmate who filed suit *pro se*." (ECF No. 12 at 7.) But that is incorrect. Williams was represented by counsel throughout the case, and there is no indication that he was incarcerated. *See generally*, *Williams v. Litscher*, Case No. 18-CV-583 (E.D. Wis.).

8

§ 973.09(2m), any probationary sentence "in excess of the maximum authorized by statute … is void and the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings." Thus, Sabo alleges there is no need for the court to amend the judgment before the Department of Corrections can remedy an unlawful sentence.[2] Either Erickson or Hanson could have acted independently to have Sabo released from custody.

In their reply brief the defendants argue that, because Wis. Stat. § 973.09(2m) is silent "as to *who* determines whether the sentence imposed exceeds the statutory maximum," "[t]he only reasonable and common sense reading of the statute is that a court must make the determination that the sentence imposed is excessive." (ECF No. 16 at 4 (emphasis in original).) This argument overlooks Sabo's allegation that the Department of Corrections, by Haley and Hicks, routinely modified unlawfully long probationary sentences without action by the circuit court. (ECF No. 10, ¶ 411-16.) It was only as a "courtesy" that the Department of Corrections notified the sentencing judge that it had modified the sentence. (ECF No. 10, ¶ 415.) In essence, Sabo's allegations suggest that even the Department of Corrections has disavowed the interpretation of the statute the defendants advance here.

---

[2] Non-probationary sentences that are in excess of the statutory maximum are similarly "commuted without further proceedings" under Wis. Stat. § 973.13, but Williams did not address the statute (*see* Case No. 18-CV-853, ECF No. 31 (plaintiff's brief in response to defendants' motion for summary judgment)), and thus neither did the court, *Williams*, 2020 U.S. Dist. LEXIS 5085.

9

Simply because Sabo was promptly released after the court amended the judgment of conviction does not necessarily preclude his claims against Haley, Hicks, Erickson, or Hanson. Sabo has adequately alleged that, by operation of Wis. Stat. § 973.09(2m), even before the court amended the judgment of conviction his custody was unlawful and the defendants could have prevented or terminated his unlawful custody.

### 3.2. Absolute Immunity as to Erickson and Hanson

Erickson and Hanson argue that they are entitled to absolute immunity "because in placing and maintaining Sabo's probation hold, Erickson and Hanson were engaged in a quasi-judicial function for which they are protected by absolute immunity." (ECF No. 7 at 18.)

The court looks "to the nature of the function performed, not the identity of the actor who performed it," to assess questions of absolute immunity. *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996)). Thus, "probation officers are absolutely immune from suits challenging conduct intimately associated with the judicial phase of the criminal process." *Tobey v. Chibucos*, 890 F.3d 634, 649 (7th Cir. 2018). Therefore, if a probation officer issues a detainer authorizing the continued detention of a probationer, she is absolutely immune for that action. *Copus v. City of Edgerton*, 151 F.3d 646, 649 (7th Cir. 1998) (citing *Walrath v. United States,* 35 F.3d 277, 282 (7th Cir. 1994)); *see also Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008) (parole officer absolutely immune for

decision to place a parole hold on plaintiff). A probation officer's motives for taking such actions are irrelevant to the question of absolute immunity. *Tobey*, 890 F.3d at 649.

In his amended complaint Sabo alleges:

504. By recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation, Defendants Erickson and Hanson violated Mr. Sabo's right to be free from cruel and unusual punishment, in violation of the Eight [sic] Amendment to the United States Constitution.

505. By unlawfully recommending detention of the Plaintiff at the Racine County Jail at a time when he should have completed his probation, Defendants Erickson and Hanson deprived Mr. Sabo of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

(ECF No. 10, ¶¶ 504-05.)

Sabo asserts that the record is not yet sufficiently developed to permit the court to decide the question of absolute immunity. (ECF No. 12 at 17.) But he also argues that a "recommendation" that a probationer be detained is not a quasi-judicial act, like an "order" or a "decision." Additionally, Sabo argues that, because his probation had expired, Erickson's and Hanson's actions were without jurisdiction and therefore not subject to absolute immunity. (ECF No. 12 at 19 (quoting *Mireles v. Waco*, 502 U.S. 9, 12 (1991) ("a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction")).)

In *Johnson v. Root*, 812 F. Supp. 2d 914, 920 (N.D. Ill. 2011), the court accepted the plaintiff's argument that a probation agent who merely "requested the court to issue a

warrant for Johnson to appear and answer the allegations at a hearing to determine whether his probation should be revoked or modified" was not entitled to absolute immunity because such a request was not akin to a judicial act. *Id.* (citing *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (noting that, because the parole officer merely recommended that a warrant be issued rather than "make an adjudicative decision to revoke" the plaintiff's parole, the act was not functionally comparable to that of a judge); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992) (granting absolute immunity to parole board members for quasi-judicial act of revoking parole, but denying immunity to parole officer who recommended revocation)).

The Court of Appeals for the Seventh Circuit, however, has rejected this view, holding that a probation officer "filing the memoranda *requesting* that the state's attorney begin proceedings to revoke probation" was "a quasi-judicial function for which she is protected by absolute immunity." *Tobey*, 890 F.3d at 650 (emphasis added); *see also Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989) (quoting *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984) (holding that absolute immunity extends to "not only the actual decision to revoke parole, but also the activities that are part and parcel of the decision process")); *Mays v. Johnson*, No. 18-CV-1769, 2020 U.S. Dist. LEXIS 151634, at *9 (E.D. Wis. Aug. 20, 2020) (holding that agent was absolutely immune for her "decision to recommend revoking [plaintiff's] extended supervision and incarcerating him"); *Weso v. Thomson*, No. 19-C-404, 2020 U.S. Dist. LEXIS 115177, at *9 (E.D. Wis. June 29, 2020)

(finding absolute immunity for parole agent who "recommended that [plaintiff]'s extended supervision be revoked and that he be incarcerated" and supervisor who "approved [agent]'s recommendation and requested a hearing").

As for Sabo's argument that Erickson and Hanson are not absolutely immune because his probation term had expired, such an error is not akin to an act done in "the clear absence of all jurisdiction." There is not a "clear absence of all jurisdiction" simply because an act "was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 1105 (1978).

There is no doubt that, if Sabo had attempted to sue the judge who mistakenly sentenced him to an unlawfully long term of probation, the judge would be absolutely immune. For the same reason, the officials who, in reliance on that judgment and without reason to suspect error, acted to revoke his probation are absolutely immune. In light of the court's holding in *Tobey* that recommending the revocation of probation is a quasi-judicial act, the court cannot reach any other conclusion. At most, Erickson and Hanson made an error and acted in excess of their authority; they did not act in a "clear absence of all jurisdiction."

Thus, the claims set forth in paragraphs 504 and 505 of the amended complaint are barred. Erickson and Hanson are absolutely immune from suit as to these claims.

A closer question is whether Erickson and Hanson are also absolutely immune for maintaining the probation hold after they recognized that the probation term the court

imposed was unlawfully long and that Sabo's probation had expired. Rather than immediately releasing Sabo as he alleges they should have pursuant to Wis. Stat. § 973.09(2m), they waited for the court to amend the judgment.

The defendants argue that "Erickson, Sabo's probation agent, and Hanson, the Assistant Regional Chief, are absolutely immune from Sabo's claims because the actions of which Sabo complains, placing and maintaining Sabo's probation hold, are quasi-judicial functions protected by absolute immunity." (ECF No. 16 at 11.) But the authority they present addresses only qualified immunity for "placing" a hold; they do not present any authority or argument addressing absolute immunity for "maintaining" a hold after realizing that the probation term was unlawfully long. "Maintaining" a hold might be seen as inseparable from "placing" a hold, in which case it might be easiest to frame the analysis in terms of whether Erickson and Hanson would be entitled to absolute immunity had they placed the hold knowing that the court had sentenced Sabo to an unlawfully long term of probation. But the defendants do not develop such an argument.

At this stage of the proceedings, and based on the record presently before the court, Erickson and Hanson have not demonstrated that continuing the hold after they recognized that Sabo's probation term was unlawfully long was a quasi-judicial act for which they enjoy absolute immunity. Therefore, the court must conclude that the claims set forth in paragraphs 506 and 507 of the amended complaint are not at this time subject to dismissal on the basis of absolute immunity.

### 3.3. Eighth Amendment Claim Against Hicks and Haley

"Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902-03 (7th Cir. 2016) (citing *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). "Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Id.* at 903. "A state officer is deliberately indifferent when he does nothing, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred. *Id.* (citing *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Burke*, 452 F.3d at 669).

The defendants argue that "simply showing that someone made a mistake in calculating an inmate's release date is not a sufficient basis for imposing liability under Section 1983." (ECF No. 7 at 9.) Because Sabo does not allege that Hicks or Haley knew that Sabo's probation term was incorrect, they cannot be said to have acted with deliberate indifference. (ECF No. 7 at 10.)

The defendants are correct insofar as they note that a mistake in calculating a sentence is not deliberate indifference, *see Shesler v. Sanders*, No. 13-cv-394-jdp1, 2014 U.S. Dist. LEXIS 158784, at *16-24 (W.D. Wis. Nov. 6, 2014), and there is no allegation that Hicks or Haley knew of the error in Sabo's judgment of conviction. Sabo does not argue

otherwise. But that is not the nature of Sabo's Eighth Amendment claim against Hicks and Haley. Sabo alleges that Haley and Hicks acted with deliberate indifference when, after recognizing that they had a long been incorrectly reviewing the lawfulness of judgments, they failed to go back and review prior judgments or otherwise take remedial action. In other words, knowing that for years they had misunderstood how to calculate the maximum length of probationary sentences for felonies, they failed to review prior judgments to determine whether any included terms of probation that were unlawfully long.

Thus, as alleged in the complaint, Haley and Hicks knew that it was essentially certain that, due to their misunderstanding of the law, many probationers were subject to unlawfully long sentences. The problem with this theory is that there is no suggestion that Haley or Hicks knew of any likely problem specific to Sabo. The court agrees with Judge Crabb, who held in a factually similar case where Haley was also named as a defendant, "Simply alleging that defendants were aware of the general possibility that prisoners' sentences may be inconsistent with Wisconsin law does not state a claim for deliberate indifference in violation of the Eighth Amendment." *Perrault v. Wisconsin*, No. 15-cv-144-bbc, 2016 U.S. Dist. LEXIS 2838, at *7-8 (W.D. Wis. Jan. 11, 2016) (citing *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (plaintiffs must demonstrate that defendants had "actual notice of a *specific* risk of serious harm so as to find [defendants] deliberately indifferent"); *James v. Milwaukee County*, 956 F.2d 696, 701 (7th Cir. 1992) (deliberate

indifference claim cannot be predicated merely on knowing of general risks of violence in prison)).

Nor is this a case where deliberate indifference could be inferred from a pattern of negligent acts. *See Shesler*, 2014 U.S. Dist. LEXIS 158784, at *24. Although Haley and Hicks allegedly repeatedly failed to identify errors in probationary sentences, that was a product of a single common error regarding how to calculate the maximum sentences, which is not evidence of a pattern of errors. *See id.* And their failure to review past judgments once they realized their error, although likely affecting many probationers, was again a single act. Consequently, Sabo's Eighth Amendment claim against Haley and Hicks (ECF No. 10, ¶ 501) must be dismissed.

### 3.4. Qualified Immunity

In much the same way that a criminal defendant has the right to fair notice that his conduct is unlawful before he can be prosecuted, "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "A public official defendant is entitled to qualified immunity unless two disqualifying criteria are met. First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right. Second, that right must have been clearly established at the time of the violation." *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020) (citing *Stainback v. Dixon*, 569 F.3d 767, 770 (7th

Cir. 2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "It is the plaintiff['s] burden to demonstrate that a constitutional right is clearly established." *Jacobs v. City of Chi.*, 215 F.3d 758, 766 (7th Cir. 2000).

That does not mean that a plaintiff must be able to point to a case directly on point. Rather, it means that he must show that existing precedent has "placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is an affirmative defense, and as such a plaintiff need not plead around it in his complaint. *Gamble v. Cnty. of Cook*, No. 1:19-cv-4297, 2020 U.S. Dist. LEXIS 169553, at *10 (N.D. Ill. Sep. 16, 2020); *see also Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020). Thus, "dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiff['s] well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson*, 967 F.3d at 590 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). Because at the motion to dismiss stage a plaintiff need only show the plausibility of his claim, complaints generally are "not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Hanson*, 967 F.3d at 597 (quoting *Alvarado*

*v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)). Since qualified immunity often depends on the unique facts of a particular case, it is often most appropriately addressed at the summary judgment stage. *See id*.

### 3.4.1.  Failure to Identify the Error in the Judgment

An initial challenge for the court with many questions of qualified immunity is determining "the appropriate level of specificity" at which "[t]he right allegedly violated must be defined." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Sabo claims that Erickson and Hanson violated the Eighth (ECF No. 10, ¶ 502) and Fourteenth (ECF No. 10, ¶ 503[3]) Amendments when they subjected him to supervision without confirming that his probation term did not exceed that authorized by law. The defendants frame this claim in terms of liability for "failing to discover the sentence error on their own." (ECF No. 7 at 20-21.) Sabo suggests only that it was clearly established that a person cannot be held in custody past the expiration of his sentence. (ECF No. 12 at 21.)

The relevant question is whether it was clearly established that a probation officer violates the Eighth or Fourteenth Amendments when she fails to verify the lawfulness of

---

[3] Sabo also names Hicks in this paragraph, but this appears to have been an error, a conclusion bolstered by the absence of Haley who otherwise is named in conjunction with the allegations against Hicks. The operative allegations in the paragraph are that the named defendants "restrained the Plaintiff's liberty, by continuing to limit and supervise his activities as conditions of probation …." (ECF No. 10, ¶ 503.) But Hicks was an administrative employee of the Central Records Unit. (ECF No. 10, ¶ 407.) To the extent that the inclusion of Hicks in this paragraph was not an error, the claim fails because there is no allegation that Hicks had any involvement in the supervision of Sabo.

19

App 019

the probationer's sentence and, as a result, subjects the probationer to supervision for a term in excess of that authorized by law.

In response to the defendants' motion to dismiss, Sabo has failed to offer any authority suggesting that a probation officer has a clearly established obligation to verify the lawfulness of a judge's sentence. Rather, in the amended complaint he alleges simply that, "[a]t a minimum, Defendants Erickson and Hanson should have determined if John Sabo was legally on probation before recommending revocation proceedings." (ECF No. 10, ¶ 450.) This normative assertion, however, does not suggest that there exists any clearly established obligation to do so. More than failing to suggest a violation of clearly established law, Sabo's allegation does not state a claim for relief. *See Perrault*, 2016 U.S. Dist. LEXIS 2838, at *6.

A probation officer is not required to verify the lawfulness of the court's sentence. *Perrault*, 2016 U.S. Dist. LEXIS 2838, at *6. Therefore, Hanson and Erickson are entitled to qualified immunity with respect to Sabo's claims that they violated the Eighth and Fourteenth Amendments by subjecting him to supervision beyond the maximum term authorized under law. Hanson and Erickson cannot be held personally liable because they, without having reason to suspect an error, subjected Sabo to supervision for the term ordered by the court. Accordingly, the court must dismiss the claims set forth in paragraphs 502 and 503 of the amended complaint.

### 3.4.2.   Failure to Release Sabo From Custody

Sabo also alleges that Erickson and Hanson violated the Eighth (ECF No. 10, ¶ 506) and Fourth (ECF No. 10, ¶ 507) Amendments by not immediately releasing him from custody once they learned that his probation term was unlawfully long, and instead waiting for the court to enter an amended judgment of conviction. The defendants frame the issue as whether it was clearly established that "enforcing the probation term in the original order and not lifting the probation hold prior to the amended judgment" would violate the constitution. (ECF No. 7 at 21.)

Sabo argues that, "In Wisconsin it has been established for nearly twenty years that the curtailment of liberty beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." (ECF No. 12 at 20 (citing *Campbell*, 256 F.3d at 700). Thus, according to Sabo, the relevant question is whether it violates the Eighth Amendment to hold a person in custody beyond the expiration of his sentence.

But in *Campbell* the court rejected the plaintiff's contention that the issue was simply whether "it was clearly established that incarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment as cruel and unusual punishment." *Campbell*, 256 F.3d at 700. The court said that the relevant question was "whether it was clearly established that the defendants, in revoking the good conduct credits and computing a new release date after the

recommitment, were violating Campbell's constitutional rights by requiring him to serve

more time than state law and his sentence required." *Id.* at 700-01. It concluded:

> At the time of the revocation of Campbell's credits, it was not apparent that this kind of state law mistake rose to the level of an Eighth Amendment violation. The record shows that the prison officials were indeed responding to Campbell's inquiries, even if ultimately in a mistaken way. The relevant statute, 730 ILCS § 5/3-3-9, does not clearly establish the rules for computing release times. Section 5/3-3-9(a) (3)(i)(B) simply states that, at the time of recommitment, "the Board may also order that a prisoner serve up to one year of the sentence imposed by the court which was not served due to the accumulation of good conduct credit." The statute does not expressly prohibit revocation of credits while the prisoner is serving the recommitment term.

*Id.* at 701.

Consistent with *Campbell*, the court agrees that the appropriate question is not

simply whether incarcerating a person beyond the expiration of his sentence violates the

Eighth Amendment. Rather, as to the claims alleged in paragraphs 506 and 507 of the

amended complaint, the issue is whether it was clearly established that a probation officer

(or her supervisor) violates the Fourth and Eighth Amendments when, after recognizing

that a sentence is unlawfully long, she does not immediately act to release the defendant.

Sabo argues that, unlike the statutes at issue in *Campbell* that the court described

as unclear, the statute at issue here is clear that it was unnecessary for Erickson or Hanson

to wait for the court to amend the judgment of conviction before releasing him. The

statute, however, is not beyond all ambiguity. As the defendants note, the statute is silent

as to who must decide that the court has imposed a term of probation beyond the

maximum authorized by law such that the excess "term is commuted without further proceedings." Wis. Stat. § 973.09(2m).

On the one hand, the Wisconsin Court of Appeals has stated:

> We note that Wis. Stat. § 973.09(2m) provides that a probation term in excess of the maximum is void and the term is valid only to the extent of the maximum term authorized by statute. That might suggest that a remand for entry of an amended judgment is not necessary. Nonetheless, we deem it the better practice to have the record reflect a judgment of conviction that correctly states the term of [the defendant's] probation ….

*State v. Oglesby*, 2006 WI App 95, ¶16 n.5, 292 Wis. 2d 716, 724, 715 N.W.2d 727, 731; *see also State v. Stewart*, 2006 WI App 67, ¶¶ 9, 22, 291 Wis. 2d 480, 487, 713 N.W.2d 165, 169 (stating that defendant's eight-year term of probation is commuted to five years and ordering, "On remand, the trial court shall enter amended judgments of conviction consistent with this opinion"); *cf. State v. Spaeth*, 206 Wis. 2d 135, 156, 556 N.W.2d 728, 737 (1996) (directing circuit court to enter an amended judgment of conviction under Wis. Stat. § 973.13 to correct an illegal sentence); *State v. Lynch*, 2015 WI App 37, ¶¶ 12-13, 363 Wis. 2d 654, 862 N.W.2d 902, 2015 Wisc. App. LEXIS 170 (unpublished) (denying claim that trial court erred by amending judgment of conviction pursuant to Wis. Stat. § 973.13 to reflect only the legally permissible term of extended supervision). Although not stating that an amended judgment was required before a probationer could be released from custody, the Wisconsin Court of Appeals' comments tend to support the defendants' view that it was appropriate to wait for an amended judgment of conviction before releasing Sabo.

On the other hand, Sabo has alleged that the Department of Corrections had a practice of interpreting this statute to allow administrative employees such as Hicks and Haley to amend sentences that they found to be in excess of the statutory maximum. If administrative employees could correct unlawful sentences under Wis. Stat. § 973.13(2m) without involving the court, a plausible inference is that probation officers such as Erickson or Hanson could do so as well. Sabo argues as much, albeit without any citation to authority. (ECF No. 12 at 12 ("Hanson had the same power as did Hicks and Haley to declare the excess of Sabo's probation term void.").)

At the motion to dismiss stage these allegations are sufficient to state a claim. Whether probation officers possessed such authority, under both law and Department policy, are matters the court cannot resolve on a motion to dismiss. Sabo has adequately alleged that a reasonable person in Hanson's or Erickson's position would have known not only that detaining a person beyond the expiration of his sentence violated the Eighth Amendment but that the unlawful portion of his sentence was automatically commuted. Therefore, the probationer could be released from custody without waiting for an amended judgment of conviction. Neither Hanson nor Erickson are entitled to qualified immunity at this stage with respect to Sabo's claims that they violated the Eighth Amendment by continuing to hold him in custody after they learned that his probation sentence was unlawfully long and had expired. (ECF No. 10, ¶ 506.) For the same reason,

the parallel claim under the Fourth Amendment (ECF No. 10, ¶ 507) is not subject to dismissal on this basis.

### 3.5. Deliberate Indifference—Erickson and Hanson

As noted above, an Eighth Amendment claim may proceed only if the defendants acted with deliberate indifference. *Figgs*, 829 F.3d at 902-03. Erickson and Hanson argue that the complaint does not adequately allege that they acted with deliberate indifference once they learned of the error in Sabo's sentence. (ECF No. 7 at 11-12.) To the contrary, they argue that the "[c]omplaint demonstrates that upon being notified of the alleged error in Sabo's probation term, Erickson acted promptly to correct it," including contacting the Records Office and forwarding information to Sabo's attorney. (ECF No. 7 at 12.) "The delay between April 13, 2018, and May 3, 2018, is attributable to the process that was required to amend Sabo's judgment of conviction, and not any inaction on Erickson's or Hanson's part." (ECF No. 7 at 12.)

Sabo responds, "That they were content to allow him to remain in custody on a probation hold while awaiting action from the sentencing court, action that, due to the operation of Wis. Stat. § 973.09, was not necessary in order to effect his release, is the epitome of deliberate indifference." (ECF No. 12 at 13.) At a minimum, he argues, Erickson or Hanson could have released him from custody while the process to amend the judgment was completed. (ECF No. 12 at 14.)

Deliberate indifference may be found not only when a defendant does nothing. Actions that are so ineffectual that they are the equivalent of doing nothing may also evidence deliberate indifference. *Figgs*, 829 F.3d at 903. Thus, the fact that Erickson and Hanson did *something* upon learning of the error does not foreclose a finding that they were deliberately indifferent. For example, a physician may exhibit deliberate indifference if he "chooses an easier and less efficacious treatment without exercising professional judgment." *Arnett*, 658 F.3d at 754.

Granted, the fact that Erickson and Hanson sought to obtain the input of the court and took steps toward this end tends to undermine the deliberate indifference claim. *See Moore v. Tartler*, 986 F.2d 682, 687 (3d Cir. 1993) (finding that parole board officials did not act with deliberate indifference in delaying inmate's release by five months because they had asked the court to clarify its order); *see also Schneider v. Cnty. of Will*, 528 F. App'x 590, 594 (7th Cir. 2013). However, these actions do not necessarily negate the possibility that they were deliberately indifferent.

Underlying the parties' positions on this issue is a dispute over what was required before Sabo could be released. It is plausible that discovery will lead to evidence that supports the conclusion that Erickson or Hanson were deliberately indifferent by choosing to hold Sabo in custody pending the court amending the judgment of conviction. Therefore, at this stage, the court cannot dismiss Sabo's Eighth Amendment claims against Erickson and Hanson.

### 3.6. State Law Claims—Governmental Immunity

Sabo's amended complaint contains two state law negligence claims. He alleges that "Defendants Sheri Hicks, Debra Haley, were negligent when they analyzed judgments of conviction, including the judgment of conviction of John Sabo, based on an erroneous understanding of the law." (ECF No. 10, ¶ 508.) And Sabo alleges "Megan Erickson, Barb Hanson, and Janelle Nehring were negligent in failing to ascertain and/or to take steps to correct the patent illegality of John Sabo's term of probation." (ECF No. 10, ¶ 509.)

"The rule of governmental immunity provides that state officers and employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties." *Pries v. McMillon*, 2010 WI 63, ¶20, 326 Wis. 2d 37, 51, 784 N.W.2d 648, 654; *see also* Wis. Stat. § 893.80. "The rule of immunity is subject to exceptions, which seek to balance the rights of injured parties to seek compensation with the need for public officers and employees to perform their duties freely." *Pries*, 2010 WI 63, ¶21. "A defense of governmental immunity for public employees focuses on whether the action or inaction upon which liability is premised is entitled to immunity." *Id.* at ¶19.

"[A] state officer or employee will not be 'shielded from liability for the negligent performance of a purely ministerial duty.'" *Pries*, 2010 WI 63, ¶22 (quoting *Kimps v. Hill*, 200 Wis. 2d 1, 10, 546 N.W.2d 151, 156 (1996)). "[A] duty is ministerial if it is 'absolute, certain and imperative, involving merely the performance of a specific task when the law

imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" *Pinter v. Vill. of Stetsonville*, 2019 WI 74, ¶41, 387 Wis. 2d 475, 492, 929 N.W.2d 547, 555 (quoting *Pries*, 2010 WI 63, ¶22). "Stated differently, a duty is regarded as ministerial when it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Id.* (quoting *Pries*, 2010 WI 63, ¶22). "For a duty to be ministerial, 'a public officer must be not only bound to act, but also bound by law to act in a very particular way.'" *Id.* at ¶45 (quoting *Yao v. Chapman*, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272). "In contrast, a discretionary act 'involves the exercise of judgment in the application of a rule to specific facts.'" *Id.* at ¶41 (quoting *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, 235 Wis. 2d 409, 424, 611 N.W.2d 693, 700).

> The defendants argue:
>
> Defendants are not aware of, and Sabo has not cited in the Complaint, any statute or regulation that obligated them in "absolute and certain" terms to review the lawfulness of Sabo's probation term and/or take steps to correct any errors in the judgment. Because Defendants were not under any legal obligation to perform the allegedly negligent acts pled in the Complaint, the acts (or lack thereof) were purely discretionary and thus immune from liability. Sabo's negligence claims are barred by governmental immunity and should be dismissed.

(ECF No. 7 at 25.)

Sabo argues that Wis. Stat. § 973.09(2m) imposed a non-discretionary duty that each defendant had to follow. (ECF No. 12 at 25.) The statute, however, cannot be fairly read as imposing any sort of ministerial duty on any defendant. It most certainly did not create a duty for any defendant to investigate the lawfulness of Sabo's sentence. Even once Erickson, Hanson, and Nehring allegedly learned that the sentence was unlawfully long, none of the defendants had a ministerial duty under the statute to release Sabo from custody. *Cf. Baumgardt v. Wausau Sch. Dist. Bd. of Educ.*, 475 F. Supp. 2d 800, 811 (W.D. Wis. 2007) (discussing Wisconsin's statute regarding mandatory reporting of child sexual abuse as a statute creating a ministerial duty). The statute is silent as to who is to determine whether a sentence has exceeded the maximum term allowed under law. At a minimum, how to proceed under the statute involved the exercise of discretion, thus placing it outside the scope of the ministerial duty exception. Therefore, the negligence claim against Erickson, Hanson, and Nehring (ECF No. 10, ¶ 509) must be dismissed because the defendants are immune from suit for this claim.

As for Hicks and Haley, Sabo alleges that they had a ministerial duty to review judgments of convictions for accuracy, and this responsibility was set forth in their position descriptions. First, a ministerial duty "must arise from some obligation created by law." *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 92, 596 N.W.2d 417, 423 (1999). There is no allegation that the Department of Corrections was obligated by law to review the lawfulness of sentences imposed by courts. *Cf. id.* at 92, 596 N.W.2d at 423 (finding

immunity in part because school district was not obligated to hire a benefits specialist to advise its employees). This is not a situation where it can be said that, by having chosen to act, Hicks and Haley had a ministerial duty to avoid performing the act negligently. *See id.* at 93, 596 N.W.2d at 423 (discussing cases). Nor can it be said that reviewing judgments for conformity with state statutes is a ministerial duty. Such actions necessarily involve applying the law to particular facts, which is a hallmark of a non-ministerial act. *See id.* at 92, 596 N.W.2d at 423. This is true even when a plaintiff argues that the statutes are unambiguous. *Id.*; *see also Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶29, 262 Wis. 2d 127, 144, 663 N.W.2d 715, 723 (holding that guidance counselor advising student to take an unapproved course was not ministerial despite the existence of a form clearly and unambiguously detailing approved and unapproved course). Therefore, the state law negligence claim against Hicks and Haley (ECF No. 10, ¶ 508) must be dismissed. The defendants are immune from suit as to Sabo's common law negligence claims.

### 4. Conclusion

Sabo has failed to adequately allege that Hicks and Haley acted with deliberate indifference toward him when they failed to re-examine the judgments they had reviewed under a mistaken understanding of the law. Therefore, the Eighth Amendment claim alleged in paragraph 501 of the amended complaint must be dismissed. The court must also dismiss the common law negligence claim against Hicks and Haley, alleged in

paragraph 508 of the amended complaint. They are immune from suit pursuant to Wis. Stat. § 893.80 because their review of judgments was not ministerial. Accordingly, Hicks and Haley are dismissed as defendants.

Nehring is also dismissed as a defendant. The only claim against her, a common law negligence claim set forth in paragraph 509 of the amended complaint, must be dismissed because she is immune from suit pursuant to Wis. Stat. § 893.80. This claim also fails as to Erickson and Hanson who are likewise immune from the claim alleged.

Erickson and Hanson are also absolutely immune with respect to the Eighth and Fourteenth Amendment claims alleged in paragraphs 504 and 505 of the amended complaint, and they are entitled to qualified immunity as to the Eighth and Fourteenth Amendment claims in paragraphs 502 and 503 of the amended complaint. Only two claims remain: Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson relating to events after they allegedly learned that Sabo's probationary sentence was unlawfully long, as alleged in paragraphs 506 and 507 of the amended complaint.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss is **granted in part and denied in part**.

It is denied with respect to Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson, as alleged in paragraphs 506 and 507 of the amended complaint. The motion is granted as to all other claims.

Hicks, Haley, and Nehring are dismissed as defendants.

Dated at Milwaukee, Wisconsin this 12th day of November, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHN SABO,**

           **Plaintiff,**

    **v.**                            **Case No. 20-CV-718**

**MEGAN ERICKSON, et al.,**

           **Defendants.**

---

# DECISION AND ORDER

---

## 1.  Facts and Procedural History

A Fond du Lac county circuit court judge sentenced John Sabo to an unlawfully long term of probation. The error was not recognized until after Sabo's term of probation should have ended and he was arrested on a new charge. Incorrectly believing that Sabo was still on probation, his probation officer, Megan Erickson, and her supervisor, Barb Hanson, recommended that Sabo's probation be revoked and that he remain in custody pending revocation. (ECF No. 10, ¶ 447-48.)

It was during his detention that Sabo learned that his sentence had been longer than that allowed by law and, thus, that his probation had ended long ago. Erickson eventually confirmed that Sabo's sentence was unlawfully long, but even then it still took

more than two weeks until a judge approved a modification of his sentence and he was released from jail.

Sabo filed suit against Erickson and Hanson, as well as Debra Haley and Sheri Hicks, who were employees of the Wisconsin Department of Corrections' Central Records Bureau who Sabo alleged should have caught and corrected the judge's error. He also sued Janelle Nehring, an Advanced Corrections Sentencing Associate with the Department of Corrections, who Sabo alleged also should have corrected the error.

The court granted in part a motion to dismiss filed by the defendants. *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258 (E.D. Wis. Nov. 12, 2020). The court dismissed all claims against Hicks, Haley, and Nehring, dismissing them as defendants. *Id.* at *36. The court also dismissed certain claims under the Eighth and Fourteenth Amendments against Erickson and Hanson. But the court denied the motion to dismiss with respect to "Sabo's Eighth and Fourth Amendment claims against Erickson and Hanson relating to events after they allegedly learned that Sabo's probationary sentence was unlawfully long, as alleged in paragraphs 506 and 507 of the amended complaint." *Id.* at *37.

Sabo has moved the court to reconsider the portions of the court's ruling that dismissed Hicks and Haley as defendants. Specifically, he contends that the dismissal of the negligence and deliberate indifference claims against Hicks and Haley was predicated on manifest errors of law. (ECF No. 21.)

2

**2. Reconsideration Standard**

"[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (quoting *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). Consequently, "[a] party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269). Nor is reconsideration an "appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. "[D]eveloping an argument for the first time in a motion to reconsider is too late." *Bloch v. Frischholz*, 587 F.3d 771, 784 n.9 (7th Cir. 2009) (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("[A]ny arguments … raised for the first time in [a] motion to reconsider are waived.")).

**3. Analysis**

**3.1. Ministerial Duty**

Sabo asserted a state law negligence claim against Hicks and Haley. Except for negligence in performing purely ministerial acts, state officers are immune from suit for actions performed within the scope of their official duties. "[A] duty is regarded as ministerial when it has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *32-33 (quoting *Pinter v. Vill. of Stetsonville*, 2019 WI 74, ¶41, 387 Wis. 2d 475, 492, 929 N.W.2d 547, 555).

Sabo argues that Wisconsin courts have taken a broad view of what "law" is in terms of assessing whether an obligation is "imposed by law." (ECF No. 21 at 3.) He argues that, because Hicks's and Haley's job descriptions were produced by the government, they are "law" for purposes of determining whether a ministerial duty existed.

But whether their job descriptions were "law" or not was beside the point. What mattered was that their jobs required Hicks and Haley to "apply[] the law to particular facts, which is a hallmark of a non-ministerial act." *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *35 (citing *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 92, 596 N.W.2d 417, 423

(1999); *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶29, 262 Wis. 2d 127, 144, 663 N.W.2d 715, 723).

For example, the job description of a government attorney may call for the attorney to interpret laws and provide legal advice. Just because those duties are set forth in a job description does not then make the attorney's acts in interpreting and applying the law ministerial. A job description does not transform discretionary duties into ministerial ones. Sabo alleges that Hicks and Haley were negligent in their application of the law to certain facts. (*See, e.g.*, ECF No. 10, ¶¶ 408 (alleging that Hicks's and Haley's jobs included analyzing "the legality of length of the term of probation"); 418 (alleging that Hicks and Haley "realized that they had been analyzing terms of felony probation incorrectly"); 419 (alleging that Hicks and Haley "realized that there were judgments of conviction that they had analyzed in 2004 and earlier in 2005 that contained unlawfully long terms of probation"); and 508 (alleging Hicks and Haley "were negligent when they analyzed judgments of conviction, including the judgment of conviction of John Sabo, based on an erroneous understanding of the law").) Analyzing or applying the law to the facts is not ministerial, even if that law was unambiguous. *Sabo* 2020 U.S. Dist. LEXIS 211258, at *35 (citing *Scott*, 2003 WI 60, ¶29 (holding that guidance counselor advising student to take an unapproved course was not ministerial despite the existence of a form clearly and unambiguously detailing approved and unapproved course). Consequently, no basis

exists for reconsidering the court's conclusion that Hicks and Haley are immune from

Sabo's negligence claim.

### 3.2. Deliberate Indifference

Sabo alleged in his amended complaint that

> Hicks and Haley violated John Sabo's right to be free from cruel and
> unusual punishment, in violation of Eight [sic] Amendment to the United
> States Constitution, and deprived Mr. Sabo of his liberty without due
> process of law, in violation of Fourteenth Amendment to the United States
> Constitution, when, as a result of their deliberate indifference they failed to
> take any steps to correct his patently illegally [sic] long term of probation,
> after they realized in 2005, that they had incorrectly analyzed judgments of
> conviction in 2004, resulting in his spending 291 days being supervised
> beyond the legal termination of his period of probation, 133 days of which
> he was held in jail.

(ECF No. 10, ¶ 501.)

Relying in part on a similar case where Haley was also a defendant, *Perrault v.*

*Wisconsin*, No. 15-cv-144-bbc, 2016 U.S. Dist. LEXIS 2838 (W.D. Wis. Jan. 11, 2016), the

court concluded that Sabo had not adequately alleged that Hicks and Haley were

deliberately indifferent. *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *20. At best, they knew that,

as a statistical matter, it was likely that some unidentified probationers had been

sentenced to unlawfully long terms of probation. But there was no allegation that Hicks

and Haley knew that *Sabo's* sentence was unlawfully long. This lack of knowledge specific

to Sabo's sentence precluded a claim of deliberate indifference. *Id.* at *19-20 (quoting

*Perrault*, 2016 U.S. Dist. LEXIS 2838, at *7-8).

The court did not say that, to state a claim under § 1983 generally or the Eighth Amendment specifically, it is always necessary to allege that a defendant official knows the identity of the person likely to be harmed by that official's inaction. In certain instances where the constitution imposes a duty on officials to act to prevent harm, alleged inaction despite knowing of a general harm may be sufficient to state a claim by the person who was ultimately harmed. But the distinction here is that Hicks and Haley did not have a constitutional duty to double-check that circuit judges imposed lawful sentences. Although the Wisconsin Department of Corrections chose to perform that sort of verification as a matter of policy, and assigned the task to Hicks and Haley, that did not create a *constitutional* duty for Hicks and Haley to seek out and correct judges' sentencing errors.

"The administration of a system of punishment entails an unavoidable risk of error." *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989). It most likely can be said that it is statistically certain that there are criminal defendants in every state who are subject to unconstitutional deprivations of liberty, including detention beyond the lawful expiration of their sentences. Nonetheless, Sabo has not shown that corrections officials have a constitutional duty to seek out and identify such individuals.

In the relevant cases Sabo cites, the plaintiffs' claims were generally premised on alleged deliberate indifference in the face of each plaintiff's complaint that his sentence had expired, *see Figgs v. Dawson*, 829 F.3d 895, 900 (7th Cir. 2016) (plaintiff, among other

things, filed an "emergency" grievance contending his sentence had expired); *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993) (plaintiff filed numerous appeals and requests with parole board); *Sample*, 885 F.2d 1099 (plaintiff made numerous complaints to officials that he should have been released); *Haygood v. Younger*, 769 F.2d 1350, 1353 (9th Cir. 1985) (plaintiff wrote a letter to the warden demanding that he be released), or officials recognized the error in conjunction with an otherwise required review, *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085 (E.D. Wis. Jan. 13, 2020) (officials recognized the error as part of a routine calculation of the plaintiff's remaining sentence in conjunction with revocation proceedings).

In only two cases did the plaintiff allege that officials should have recognized the error in his specific sentence in the absence of it being brought to their attention, and in both of those cases the court rejected the argument. *Perrault*, 2016 U.S. Dist. LEXIS 2838, at *5 (dismissing action in part "because plaintiff has not alleged that any of the defendants had personal knowledge that his sentence was unlawful" and not deciding whether "prison administrators or prison record keepers had a constitutional obligation to identify and take some sort of action to correct a judge's unlawful sentencing order" because it would not affect the outcome); *Combs v. Pederson*, No. 08-cv-482-slc 1, 2009 U.S. Dist. LEXIS 30847, at *7-8 (W.D. Wis. Apr. 10, 2009) (rejecting plaintiff's claims that he was detained unlawfully because, in part, "[n]o one told defendant Pederson that plaintiff's probation had been terminated or that the order under which plaintiff was

incarcerated was not valid" and "it is not enough to show that plaintiff *should have known* that plaintiff was being confined illegally" (emphasis in original)).

That Wisconsin did more than was required and attempted to identify and correct the sorts of errors that permeate the criminal justice system did not then create a constitutional cause of action when those actions fell short. Judicial errors in sentencing are primarily matters for defendants and their counsel to recognize and address. *Cf. Williams*, 2020 U.S. Dist. LEXIS 5085, at *10 ("Williams or his criminal defense attorney could have noticed the error at the time the judgment was entered (or at any later time) and brought it to the court's attention."). A corrections official may be liable only if, knowing of an error in a plaintiff's case, that official is deliberately indifferent in acting to remedy the error. *See Moore*, 986 F.2d at 686 (citing *Sample*, 885 F.2d at 1110) ("a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted")). Knowing of a general likelihood of errors affecting a class of defendants is not enough to obligate a corrections official to double-check the lawfulness of a sentence imposed by a judge.

Consequently, there is no basis to reconsider the court's prior decision dismissing Sabo's claims against Hicks and Haley. Because they did not have a constitutional duty to identify and correct the judge's error in Sabo's sentence, Sabo's Eighth Amendment claim against Hicks and Haley fails.

9

**IT IS THEREFORE ORDERED** that Sabo's motion for reconsideration is **denied**.

Dated at Milwaukee, Wisconsin this 6th day of May, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHN SABO,**

                **Plaintiff,**

      **v.**                            **Case No. 20-CV-718**

**SHERI HICKS, et al.,**

                **Defendants.**

# DECISION AND ORDER

Before the court is defendants Megan Erickson and Barb Hanson's motion for judgment on the pleadings. (ECF No. 30.) As recounted in the court's prior decisions, *Sabo v. Erickson*, No. 20-CV-718, 2021 U.S. Dist. LEXIS 86540 (E.D. Wis. May 6, 2021); *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258 (E.D. Wis. Nov. 12, 2020), John Sabo alleges he was sentenced to an unlawfully long term of probation. After his probation term should have expired, he was arrested and his supervising probation agent placed a probation hold, causing him to remain in custody. He alleges that his probation officer, Erickson, and her supervisor, Hanson, violated the Fourth and Eighth Amendments by not releasing him once they learned his sentence was unlawfully long.

The defendants argue that they are entitled to judgment on the pleadings because, as a matter of law, neither Erickson nor Hanson could have released Sabo once they were made aware that his sentence was unlawfully long. Rather, they argue, they were required to wait for the court to amend the judgment. In their view, permitting a probation officer the power to essentially amend a judgment "would be a fantastic grant of essentially appellate judicial power to a layperson …." (ECF No. 30 at 4.) They argue, at a minimum, they are entitled to qualified immunity on these claims. (ECF No. 30 at 5.)

The court largely addressed these issues in its decision on the defendants' motion to dismiss. *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258, at *26-29 (E.D. Wis. Nov. 12, 2020). As the court noted, although not clearly required under Wis. Stat. § 973.09(2m), Wisconsin court have generally ordered an amended judgment in cases where a probation sentence was found to be unlawfully long. *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258, at *27 (E.D. Wis. Nov. 12, 2020) (quoting *State v. Oglesby*, 2006 WI App 95, ¶16 n.5, 292 Wis. 2d 716, 724, 715 N.W.2d 727, 731; citing *State v. Stewart*, 2006 WI App 67, ¶¶ 9, 22, 291 Wis. 2d 480, 487, 713 N.W.2d 165, 169; *State v. Spaeth*, 206 Wis. 2d 135, 156, 556 N.W.2d 728, 737 (1996); *State v. Lynch*, 2015 WI App 37, ¶¶ 12-13, 363 Wis. 2d 654, 862 N.W.2d 902, 2015 Wisc. App. LEXIS 170).

But the court noted that Sabo alleges that the Wisconsin Department of Corrections actually did what the defendants characterize as "a fantastic grant of essentially appellate judicial power to a layperson …." Sabo alleges that other low-level clerical employees

routinely amended judgments pursuant to Wis. Stat. § 973.09(2m) to correct excessively

long sentences. Given this grant of authority to clerical staff, as the court previously

stated, "a plausible inference is that probation officers such as Erickson or Hanson could

do so as well. Sabo argues as much, albeit without any citation to authority. (ECF No. 12

at 12 ('Hanson had the same power as did Hicks and Haley to declare the excess of Sabo's

probation term void.').)" *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258, at

*28 (E.D. Wis. Nov. 12, 2020).

> As the court previously stated,
>
> At the motion to dismiss stage these allegations are sufficient to state a claim. Whether probation officers possessed such authority, under both law and Department policy, are matters the court cannot resolve on a motion to dismiss. Sabo has adequately alleged that a reasonable person in Hanson's or Erickson's position would have known not only that detaining a person beyond the expiration of his sentence violated the Eighth Amendment but that the unlawful portion of his sentence was automatically commuted. Therefore, the probationer could be released from custody without waiting for an amended judgment of conviction. Neither Hanson nor Erickson are entitled to qualified immunity at this stage with respect to Sabo's claims that they violated the Eighth Amendment by continuing to hold him in custody after they learned that his probation sentence was unlawfully long and had expired. (ECF No. 10, ¶ 506.) For the same reason, the parallel claim under the Fourth Amendment (ECF No. 10, ¶ 507) is not subject to dismissal on this basis.

*Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258, at *28-29 (E.D. Wis. Nov. 12,

2020).

Because a motion for judgment on the pleadings applies the same standard as

motion to dismiss under Rule 12(b)(6), *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir.

2016), Erickson and Hanson's motion to dismiss fails for the same reasons its motion to dismiss failed.

**IT IS THEREFORE ORDERED** that the defendants' motion for judgment on the pleadings (ECF No. 30) is **denied**.

Dated at Milwaukee, Wisconsin this 9th day of June, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHN SABO,**

                              **Plaintiff,**

         v.                              **Case No. 20-CV-718**

**MEGAN ERICKSON, et al.,**

                              **Defendants.**

---

# DECISION AND ORDER

---

### 1. Background

A Wisconsin Circuit Court judge sentenced John Sabo to an unlawfully long term of probation. *Sabo v. Hicks*, No. 20-CV-718, 2020 U.S. Dist. LEXIS 211258 (E.D. Wis. Nov. 12, 2020). Neither Sabo's attorney nor the prosecutor alerted the judge of his error. It was not until Sabo was incarcerated for allegedly violating his probation by committing a new offense that he recognized that his probation should have already ended. Sabo's attorney alerted his probation officer, Megan Erickson, of the error on April 13, 2018. *Id.* at *3; (ECF No. 45, ¶¶ 1, 5).

Upon learning of the error, Erickson emailed the Department of Corrections'
(DOC) Central Records Office and asked personnel there to review Sabo's judgment of
conviction.  (ECF No. 45, ¶ 6.) An employee of the Central Records Office responded:

> The defense attorney appears to be correct on this one. Attorney Todd Allen
> from the Office of Legal Counsel has changed out [sic] procedure, [sic] We
> are no longer commuting terms of probation per statute 973.09(2m), and we
> are no longer asking for an amendment. I can send a letter to the court
> advising them of the excessive term of probation, but if the court disregards
> the letter or takes no action we have to leave it at 5 years. I would advise his
> attorney to take the appropriate action to get this resolved. He/ She is
> welcome to call me and I would be happy to explain the changes.

(ECF No. 35-1 at 1.)  Erickson forwarded that email to Sabo's attorney. (ECF No. 45, ¶ 9.)
When the Central Records Office employee and Sabo's attorney notified the court of the
error, the court amended the judgment of conviction, and Sabo was released from
custody the same day, May 3, 2018. (ECF Nos. 43-2 at 9; 45, ¶ 11.)

Barb Hanson was the Assistant Regional Supervisor over Erickson, although not
her direct supervisor. (ECF Nos. 45, ¶ 12; 48, ¶ 1.) The parties dispute the nature and
extent of Hanson's involvement in matters relating to Sabo. (ECF No. 48, ¶¶ 1-3.) But
construing the facts in the light most favorable to Sabo, the court accepts for purposes of
summary judgment that Hanson decided that the DOC would proceed to seek revocation
of Sabo's probation (ECF No. 48, ¶ 2) and that Sabo would remain in custody pending
revocation (ECF No. 48, ¶ 3).

Sabo alleges that Erickson and Hanson violated the Fourth, Eighth, and Fourteenth
Amendments by keeping him in custody after they recognized that his probation term

was longer than that permitted by law. The court previously granted in part a motion to dismiss, *Sabo*, 2020 U.S. Dist. LEXIS 211258), and denied motions for reconsideration, *Sabo v. Erickson*, No. 20-CV-718, 2021 U.S. Dist. LEXIS 86540 (E.D. Wis. May 6, 2021), and for judgment on the pleadings (ECF No. 31). In those decisions the court explained that it could not resolve Sabo's claims against Erickson and Hanson because it was plausible that, with discovery, Sabo would be able to adduce evidence that could lead a reasonable finder of fact to conclude that Erickson and Hanson violated Sabo's constitutional rights.

All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The defendants' motion for summary judgment (ECF No. 32) is fully briefed and ready for resolution.

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del*

3

*Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

**3. Analysis**

Sabo contends that, once Erickson and Hanson recognized that his sentence was unlawfully long, they were obligated to release him from custody and not wait for the court to amend the judgment. In support, Sabo points to *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (en banc), and *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).

In *Haygood*, 769 F.2d 1350, prison officials used an incorrect method to calculate the plaintiff's release date, resulting in the plaintiff spending five extra years in prison (nearly two of which were after he had raised the alleged error with prison officials). *Id.* at 1356. A jury found in favor of the plaintiff on his claims against two records officials who miscalculated his sentence. The court of appeals stated, "Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest[;] otherwise, such detention can be held to be unconstitutional only if it violates due process." *Id.* at 1354 (citations omitted). It agreed with the district court that there was evidence to support the jury's verdict because "[t]he plaintiff presented credible evidence that the defendants, after

4

being put on notice, simply refused to investigate a computational error." *Id.* at 1355

(citing *Haygood v. Younger*, 527 F. Supp. 808, 823 (E.D. Cal. 1981)).

In *Sample*, 885 F.2d 1099, the plaintiff was kept in custody for nine months because

of a prison records official's incorrect conclusion that the plaintiff still had time to serve.

*Id.* at 1102. The court explained:

> To establish § 1983 liability in this context, a plaintiff must first
> demonstrate that a prison official had knowledge of the prisoner's problem
> and thus of the risk that unwarranted punishment was being, or would be,
> inflicted. Second, the plaintiff must show that the official either failed to act
> or took only ineffectual action under circumstances indicating that his or
> her response to the problem was a product of deliberate indifference to the
> prisoner's plight. Finally, the plaintiff must demonstrate a causal
> connection between the official's response to the problem and the infliction
> of the unjustified detention.

*Id.* at 1110. The court concluded that the record supported a finding that the records

official was deliberately indifferent because, although recognizing the potential merit to

the plaintiff's inquiry, he did not take remedial action and instead ignored and violated

regulations. *Id.* at 1111.

"Incarceration beyond the date when a person is entitled to be released violates

the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*,

829 F.3d 895, 902-03 (7th Cir. 2016) (citing *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir.

2006); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). "Deliberate indifference

requires more than negligence or even gross negligence; a plaintiff must show that the

defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs*, 829 F.3d at 903.

In *Haygood* and *Sample* (as well as *Campbell*, 256 F.3d 695, *Figgs*, 829 F.3d 895, and *Burke*, 452 F.3d 665, which address similar claims), the errors that prolonged the plaintiffs' custody were those of corrections officials. Here, the error was that of the sentencing judge. In this regard, only *Williams v. Litscher*, No. 18-C-0583, 2020 U.S. Dist. LEXIS 5085 (E.D. Wis. Jan. 13, 2020), is analogous. Sabo attempts to diminish *Williams*, in part, by incorrectly referring to it as "a *pro se* case." (ECF No. 46 at 8 (italics in original).) The court previously corrected Sabo on this point, noting that Williams was represented by counsel throughout that action. *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *37 n. 1.

In *Williams*, when the plaintiff was arrested and a supervision hold put in place, DOC officials discovered that the court had imposed an unlawfully long term of extended supervision. Williams spent 36 days in jail before the error was corrected and he was released. *Williams*, 2020 U.S. Dist. LEXIS 5085, at *1. Although the court granted summary judgment to all of the defendants, that action is distinguishable from Sabo's claim in significant respects. For example, the plaintiff's supervising agent was unaware until the day of Williams's release that his term of supervision was unlawfully long. *Id.* at *11. The other defendants—DOC administrative employees who recognized the error and processed the corrected judgment—were not liable because they proceeded diligently and in accordance with DOC policies. *Id.* at *12-14.

As this court noted when it denied the defendants' motion to dismiss, it was plausible that Sabo would be able to present evidence that Erickson and Hanson had the authority to unilaterally correct what they regarded as a sentence in excess of the maximum allowed by law. *Sabo*, 2020 U.S. Dist. LEXIS 211258, at *28. After all, Wis. Stat. § 973.09(2m) states, "If a court imposes a term of probation in excess of the maximum authorized by statute, the excess is void and the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings." And Sabo alleged that the DOC had a practice of allowing at least two administrative employees to change sentences they concluded to be unlawful, without seeking approval from the sentencing judge. *See Sabo*, 2020 U.S. Dist. LEXIS 211258, at *28.

Erickson, however, states that, since becoming a probation agent in 2000, before the issue came up in this case, she had never heard of any DOC employee commuting a judgment based on a perceived legal error in it. (ECF No. 35, ¶¶ 2, 4.) And Sabo has not adduced any evidence demonstrating that Erickson or Hanson could disregard or commute an unambiguous sentence. To the contrary, when Erickson inquired as to Sabo's status, she was told that a DOC lawyer had changed the department's policy so that it is "no longer commuting terms of probation per statute 973.09(2m)" nor asking the court to amend judgments. (ECF No. 35-1 at 1.) Rather, it is the department's policy that, until the court amends the judgment of conviction, the department has to enforce the sentence

imposed by the court. (ECF No. 35-1 at 1.) This view that an amended judgment of conviction is required is supported in Wisconsin caselaw. *See Sabo*, 2020 U.S. Dist. LEXIS 211258, at *27 (quoting *State v. Oglesby*, 2006 WI App 95, ¶16 n.5, 292 Wis. 2d 716, 724, 715 N.W.2d 727, 731; citing *State v. Stewart*, 2006 WI App 67, ¶¶ 9, 22, 291 Wis. 2d 480, 487, 713 N.W.2d 165, 169; *State v. Spaeth*, 206 Wis. 2d 135, 156, 556 N.W.2d 728, 737 (1996); *State v. Lynch*, 2015 WI App 37, ¶¶ 12-13, 363 Wis. 2d 654, 862 N.W.2d 902, 2015 Wisc. App. LEXIS 170 (unpublished)).

While conceding that "[t]he decision to continue revocation proceedings seems to have been required by [the DOC attorney's] advice," Sabo nonetheless argues that Erickson and Hanson were required to release him from custody once they recognized that his probation had ended. (ECF No. 49 at 9.) He notes that the DOC is not required to hold a defendant in custody while seeking revocation. (ECF No. 46 at 9.)

But for Erickson or Hanson to have released Sabo would have required them to disregard the judgment. Before learning of the error, they had determined that detention and revocation were appropriate. And Erickson was told that, unless the judge acts to correct the sentence, the department must enforce the sentence imposed. (ECF No. 35-1 at 1.) Therefore, enforcing the sentence meant holding Sabo in custody unless and until the judge amended the sentence.

Having investigated the issue, Erickson and Hanson were not deliberately indifferent to Sabo's right to be free from cruel and unusual punishment simply because,

relying on the advice of DOC counsel, they continued to enforce an unambiguous judgment while waiting for the court to correct its error. Nor could a reasonable finder of fact conclude that it shocks the conscience, so as to violate the Fourteenth Amendment, for a probation officer to enforce a court's judgment despite the probation officer's own belief that the judgment was unlawful. And, finally, Sabo's fourth amendment claim fails because it likewise is based on the false premise that Erickson and Hanson were required to disregard the court's judgment.

Not merely permitting but requiring (at the risk of personal liability) low-level corrections officials to disregard a court's judgment of conviction when they believe the judgment is unlawful is an untenable proposition. It is easy to envision a wide variety of instances where corrections employees and courts may disagree as to the lawfulness of a sentence. It was possible that the judge that sentenced Sabo may have disagreed with the DOC and Sabo's lawyer and rejected the request to amend the judgment of conviction. Under such circumstances, Sabo's recourse would have been with the court of appeals. But the DOC would have had no choice but to enforce the judgement. Expecting that corrections officials will enforce sentences imposed by courts is not only reasonable, it is an essential component of the criminal justice system. It cannot form a basis for liability under § 1983.

### 4. Conclusion

Sabo undoubtedly suffered a wrong. Understandably, he seeks compensation. But Erickson and Hanson are not liable for any injuries he suffered. Accordingly,

**IT IS THEREFORE ORDERED** that Megan Erickson and Barb Hanson's motion for summary judgment (ECF No. 32) is **granted**. This action is dismissed with prejudice. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of November, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

# United States District Court

## Eastern District of Wisconsin

**JUDGMENT IN A CIVIL ACTION**

**JOHN SABO,**

Plaintiff,

v.                                   Case No. **20-CV-718**

**SHERI HICKS,**
**MEGAN ERICKSON,**
**BARB HANSON,**
**JANELLE NEHRING, and**
**DEBRA HALEY,**

Defendants.

☒   **Decision by Court.**  This action came before the Court and decisions have been rendered.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendants Sheri Hicks, Megan Erickson, Barb Hanson, Janelle Nehring, and Debra Haley, and against the plaintiff John Sabo, on Sabo's action regarding a violation of his constitutional rights due to the imposition of an unlawfully long term of probation.

Defendants Sheri Hicks, Megan Erickson and Janelle Nehring's Motion to Dismiss is **GRANTED**.

Defendants Megan Erickson and Barb Hanson's Motion for Summary Judgment is **GRANTED**.

This action is hereby **DISMISSED WITH PREJUDICE**.

Date: November 30, 2021

Gina M. Colletti, Clerk of Court
EASTERN DISTRICT OF WISCONSIN
(By) Deputy Clerk, s/ Linda M. Zik

Approved this 30th day of November, 2021.

WILLIAM E. DUFFIN
United States Magistrate Judge