In the
# United States Court of Appeals
### For the Seventh Circuit
**Chicago, Illinois 60604**

JOHN SABO,

      Plaintiff – Appellant,

          v.

MEGAN ERICKSON, et al.,

      Defendants – Appellees.

On Appeal from the United States District Court
For the Eastern District of Wisconsin,
The Honorable Magistrate Judge William E. Duffin Presiding,
District Court Case No: 2:20-cv-00718-WED

### Supplemental Brief of Plaintiff–Appellant

### Rehearing *En Banc*

Jeff Scott Olson
THE JEFF SCOTT OLSON LAW FIRM, S.C.
1025 Quinn Drive, Suite 500
Waunakee, WI 53597-2502
608-283-6001
jsolson@scofflaw.com

*Counsel of Record for Plaintiff-Appellant*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, counsel for the Plaintiff-Appellant, Jeff Scott Olson, hereby makes the following disclosures.

1. The full name of every party that the attorney represents in the case:

John Sabo

2. The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear in this Court.

The Jeff Scott Olson Law Firm, S.C.

3. If the party or amicus is a corporation: (i) identify all of its parent corporations, if any.

John Sabo is not a corporation.

4. List any publicly held company that owns 10% or more of the party's or amicus's stock.

Not applicable.

Dated this Thursday, July 25, 2024.

Respectfully submitted,

THE JEFF SCOTT OLSON LAW FIRM, S.C.

/s/Jeff Scott Olson

_____

Jeff Scott Olson
ATTORNEYS FOR PLAINTIFF–APPELLANT

# In the
# United States Court of Appeals
## For the Seventh Circuit
### Chicago, Illinois  60604

JOHN SABO,

      Plaintiff – Appellant,

         v.

MEGAN ERICKSON, et al.,

      Defendants – Appellees.

On Appeal from the United States District Court
For the Eastern District of Wisconsin,
The Honorable Magistrate Judge William E. Duffin Presiding,
District Court Case No: 2:20-cv-00718-WED

## Supplemental Brief of Plaintiff–Appellant

### Rehearing *En Banc*

Jeff Scott Olson
THE JEFF SCOTT OLSON LAW FIRM, S.C.
1025 Quinn Drive, Suite 500
Waunakee, WI 53597-2502
608-283-6001
jsolson@scofflaw.com

*Counsel of Record for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................1

TABLE OF AUTHORITIES ............................................................................................2

Facts .....................................................................................................................................1

I.      The Wisconsin Department of Corrections Creates Machinery to Correct
        Unlawful Criminal Sentences Frequently Imposed by Circuit Court Judges. .... 1

II.     John Sabo is Sentenced to an Unlawfully Long Term of Probation. ........... 3

III.    The Central Records Unit Fails to Recognize, and then Fails to Correct,
        John Sabo's Unlawfully Long Term of Probation.................................................... 4

IV.     John Sabo is Arrested and Jailed....................................................................... 5

ARGUMENT ......................................................................................................................7

I.      The First Amended Complaint Alleges Facts from Which a Reasonable
        Trier of Fact Could Infer that the Central Records Unit Defendants, Haley and
        Hicks, had a Duty under the Eighth Amendment to Take Some Reasonable
        Action after they Learned That a Large Number of Unlawful Sentences had
        Evaded their Correction and that this Duty was Clearly Established in 2005. ... 7

II.     This Court's Prior Decisions Compel Rejection of the Qualified Immunity
        Defense. .................................................................................................................... 11

        A.      Mr. Sabo does not Contend that the Only Way for Hicks and Haley to
                Have Avoided Being Deliberately Indifferent was to Perform a Complete
                Review of Thousands of Sentences – They Just had to do Something
                Reasonable. .......................................................................................................... 15

III.    The First Amended Complaint Adequately Alleges Proximate Cause, to
        the Extent this may be Required. ........................................................................... 17

IV.     This Case is not like Those Where the Court Relied only upon a General
        Risk of Human Error. ............................................................................................... 20

CONCLUSION .............................................................................................. 25

Rule 32(a)(7) CERTIFICATION ...................................................................... 26

FORMER CIRCUIT RULE 31(e) CERTIFICATE ......................................... 26

CERTIFICATE OF SERVICE .......................................................................... 27

## TABLE OF AUTHORITIES

### CASES

*Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990) ....................................... 13

*Borello v. Allison*, 446 F.3d 742 (7th Cir. 2006) ............................................. 16

*Campbell v. Illinois Department of Corrections*, 907 F. Supp. 1173 (N.D. Ill. 1995).... 21

*Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001) ...................................... 13, 21

*Estate of Escobedo v. Bender*, 600 F.3d 770 (7th Cir. 2010)............................. 12

*Estate of Moreno by and through Moreno v. Correctional Healthcare Companies, Inc.*,
    NO: 4:18-CV-5171-RMP, 2019 WL 10733237 (E.D. Wash. Aug. 5, 2019) ............ 18

*Estate of Novack ex rel. Turbin v. Wood County*, 226 F.3d 525 (7th Cir. 2000)............ 16

*Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996)...................................... 19

*Farmer v. Brennan*, 511 U.S. 825 (1994) ....................................... 16, 17, 21, 22

*Figgs v. Dawson*, 829 F.3d 895 (7th Cir. 2016) ........................................ 11, 13

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513 (7th Cir. 2012)............................. 12

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989) ....................................passim

*Santiago v. Lane*, 894 F.2d 218 (7th Cir. 1990)............................................ 18

*Watford v. Miller*, No. 09-C-244, 2010 WL 1257812 (E.D. Wis. Mar. 26, 2010) ........ 10

### STATUTES

Wis. Stat. § 346.63(1) ......................................................................................... 3

Wis. Stat. § 973.09(2) ......................................................................................... 4

Wis. Stat. § 973.09(2)(b)1 ................................................................................. 4

Wis. Stat. § 973.09(2m) ..................................................................................... 1

### OTHER AUTHORITIES

Lynn Adelman, The Adverse Impact of Truth-in-Sentencing on Wisconsin's
   Efforts to deal with Low- Level Drug Offenders, 47 Val. U. L. Rev. 689, 699
   (2013)...................................................................................................................................iii

## TREATISES

1 T. Schoenbaum, Admiralty and Maritime Law (2d ed.1994)................................18

**Facts**

**I.**     **The Wisconsin Department of Corrections Creates Machinery to Correct Unlawful Criminal Sentences Frequently Imposed by Circuit Court Judges.**

In the years after the turn of the century, Wisconsin tinkered with its criminal sentencing structure repeatedly,[1] and, as shown below, for a time, Wisconsin circuit court judges made a lot of mistakes in imposing criminal sentences, especially terms of probation. This possibility was anticipated in the statutes. In flinty terms, Wis. Stat. § 973.09(2m)[2] provided:

> If a court imposes a term of probation in excess of the maximum authorized by statute, the excess is void and the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings.

In 2004, the Judgments of Conviction of people who had been placed on probation were reviewed in the Wisconsin Department of Corrections Central Records Unit by Defendants Debra Haley and Sheri Hicks. (Sep. App. 69, dkt. #

---

[1] Lynn Adelman, The Adverse Impact of Truth-in-Sentencing on Wisconsin's Efforts to deal with Low- Level Drug Offenders, 47 Val. U. L. Rev. 689, 699 (2013), available at https://scholar.valpo.edu/vulr/vol47/iss3/1/
(last accessed May 15, 2022)("In the decade after it took effect, TIS created so many problems that the legislature had to revise it at least three times.")

[2] All references to the Wisconsin Statutes are to the 2003–2004 version of the statutes unless otherwise noted.

10, ¶ 407.) In 2004, one of their job duties was to analyze new judgments of conviction with court-ordered terms of probation for completeness and accuracy, including, in each case, the legality of the length of the term of probation. (Sep. App. 69, dkt. # 10, ¶ 408.) The job descriptions of Hicks and Haley required them to have knowledge of Wisconsin statutes relating to crime, penalty enhancement, and permissible terms of probation, and they each had that knowledge. (Sep. App. 69, dkt. # 10, ¶ 410.)

If Haley or Hicks encountered an unlawfully long term of probation on a judgment of conviction, it was their job to correct that judgment of conviction so that the term of probation was lawful. (Sep. App. 69, dkt. # 10, ¶ 411.) To do that, when they encountered a term of probation in excess of what was allowed by law, Haley and Hicks would physically cross off the excessive term of probation on the judgment of conviction and write in the maximum allowable term of probation. (Sep. App. 69, dkt. # 10, ¶ 412.)

They would then make two copies of the corrected judgment of conviction. (Sep. App. 70, dkt. # 10, ¶ 413.) One copy stayed in the Central Records Unit files; the other copy, along with a cover sheet and an explanation of why the term of probation had been reduced, was sent to the probation agent of record. (Sep. App. 70, dkt. # 10, ¶ 414.) It was the agent's job to send, as a courtesy, the

2

corrected judgment of conviction and the explanation for the correction back to the sentencing judge. (Sep. App. 70, dkt. # 10, ¶ 415.)

In 2004, approximately five or six judgments of conviction needed to the corrected in this way *each day*. (Sep. App. 70, dkt. # 10, ¶ 416.)

## II.    John Sabo is Sentenced to an Unlawfully Long Term of Probation.

On November 30, 2004, John Sabo was sentenced in Fond du Lac County Case 2003 CF 313 for a violation of Wis. Stat. § 346.63(1) (Driving While Under the Influence), which, by virtue of his several prior offenses, was a Class H Felony.[3]  (Sep. App. 68, dkt. # 10, First Amended Complaint, ¶ 401.) He was sentenced to three years in prison and two years on extended supervision.[4]  That sentence was stayed, and he was placed on probation for a period of five years, consecutive to other sentences. (Sep. App. 68, dkt. # 10, ¶ 402.)

Mr. Sabo was sentenced under 2001 Act 109 (Truth in Sentencing II).  (Sep. App. 68, dkt. # 10, ¶ 403.)  Five years was an unlawfully long period of probation

---

[3] Wisconsin felonies are divided into several classes, for purposes of the specification of penalties, in § 939.50 Wis. Stats.

[4] Under Truth-in-Sentencing, extended supervision referred to a period of community supervision following release from prison, like the "parole" that usually followed release under prior law. *State v. Brown*, 2006 WI 131, ¶ 44, 298 Wis. 2d 37, 61, 725 N.W.2d 262, 273. Probation involves a period of community supervision not necessarily preceded by a period of incarceration. "Probation, parole and extended supervision all involve persons under community supervision." *State v. Rowan*, 2012 WI 60, ¶ 10, 341 Wis. 2d 281, 293, 814 N.W.2d 854, 860

for a Class H felony under the Truth in Sentencing II statute. (Sep. App. 68, dkt. # 10, ¶ 404.) Pursuant to Wis. Stat. § 973.09(2)(b)1, the maximum term of probation for conviction of a Class H felony, when Mr. Sabo's offense had occurred, in July, 2003, was three years. (Sep. App. 68, dkt. # 10, ¶ 405.)

## III.    The Central Records Unit Fails to Recognize, and then Fails to Correct, John Sabo's Unlawfully Long Term of Probation.

Within weeks of his sentencing, the paperwork with John Sabo's sentencing information (including the judgment of conviction that listed the date of his offense and term of probation) was sent to the Wisconsin Department of Corrections Central Records Unit.  (Sep. App. 68, dkt. # 10, ¶ 406.)

Although, in 2004, the statute that governed the length of probation terms, Wis. Stat. § 973.09(2), provided that the original term of probation was to be not less than one year nor more than either the maximum term of confinement in prison for the crime[5] or three years, whichever was greater, Haley and Hicks were then under the erroneous impression that a term of probation for a felony

---

[5] Felonies are divided into nine classes, Class A through Class I, and the maximum penalty is specified for each class of felony in § 939.50, Wis. Stats., which uses the term "imprisonment."  A sentence of "imprisonment," however, is actually required to be bifurcated into a period of "confinement in prison" followed by a period of "extended supervision" in the community (analogous to parole). The requirement that sentences be bifurcated, and the maximum term of confinement in prison for each class of felony, are set forth in § 973.01, Wis. Stats.

could be as long as the term of confinement in prison *plus* the term of extended supervision, and as a result, many unlawfully long terms of probation escaped their notice during 2004 and early 2005. (Sep. App. 70, dkt. # 10, ¶ 417.) Necessarily, John Sabo's unlawfully long term of probation was one of them, since it came through their office during this time frame.

In 2005, Haley and Hicks were given a chart that showed the maximum permissible terms of probation for each type of felony, and upon reviewing that chart, they realized that they had been assessing terms of felony probation incorrectly. (Sep. App. 70, dkt. # 10, ¶ 418.)

They realized that there were judgments of conviction that they had analyzed in 2004, and earlier in 2005, that contained unlawfully long terms of probation. (Sep. App. 71, dkt. # 10, ¶ 419.)  Despite this knowledge, they took no steps to find and correct the unlawful judgments of conviction that they knew they had allowed to pass uncorrected in 2004 and early 2005. (Sep. App. 71, dkt. # 10, ¶ 420.)

## IV.   John Sabo is Arrested and Jailed.

Because his sentence in Case 2003 CF 313 was consecutive to other sentences, John Sabo did not begin his term of probation on that case until July 20, 2014. (Sep. App. 71, dkt. # 10, ¶ 423, admitted in Answer, dkt. # 20, ¶ 424.)

5

Since the maximum lawful period of probation for a Class H felony was three years, his probation on Case 2003 CF 313 should have terminated on July 17, 2017.

On December 21, 2017, four months after his term of probation should have ended, John Sabo was arrested and charged with a misdemeanor in Racine County Case 2017 CM 2559. (Sep. App. 74, dkt. # 10, ¶ 445 admitted in Answer, dkt. # 20, ¶ 445.) On December 22, 2017, the Racine County Circuit Court granted Mr. Sabo a signature bond for his release in his new criminal case; if the new prosecution had been the only basis for his custody, he could have signed his bond and walked out of the courthouse. (Sep. App. 74, dkt. # 10, ¶ 446, admitted in Answer, dkt. # 20, ¶ 466.)

However, Mr. Sabo remained incarcerated because his probation officer began proceedings to revoke his probation in Case 2003 CF 313, and put a "hold" on him which required his detention in jail while those revocation proceedings went forward. (Sep. App. 74-75, dkt. # 10, ¶ 447, admitted in Answer, dkt. # 20, ¶ 447.) He discovered his probation term had been unlawfully long when perusing a law book in the jail, and his attorney acted on this information to get his sentence corrected. (Sep. App. 76, dkt. # 10, ¶¶ 454, 457.) John Sabo was held in Racine County Jail from December 21, 2017, until May 3, 2018, a period of 134 days. (Sep. App. 77, dkt. # 10, ¶ 463, Admitted in Answer, dkt. # 20, ¶ 463.)

## ARGUMENT

**I.     The First Amended Complaint Alleges Facts from Which a
        Reasonable Trier of Fact Could Infer that the Central Records Unit
        Defendants, Haley and Hicks, had a Duty under the Eighth
        Amendment to Take Some Reasonable Action after they Learned
        That a Large Number of Unlawful Sentences had Evaded their
        Correction and that this Duty was Clearly Established in 2005.**

The panel majority correctly held that state actors keeping a criminal

offender in custody beyond the date upon which he or she is entitled to release

violate the Eighth Amendment if it is the product of deliberate indifference, and

that probation is a form of custody. *Sabo v. Erickson*, 100 F.4th 880, 887 (7th Cir.

2024), reh'g en banc granted, opinion vacated, No. 21-3332, 2024 WL 3220734 (7th

Cir. June 28, 2024).

The operant facts giving rise to a damages claim under § 1983 against the

Central Records Unit Defendants, Hicks and Haley, were correctly set forth by

the panel majority. In 2004, it was their job to review sentences imposed on

convicted criminal defendants by Wisconsin circuit court judges. They conducted

their review at the time an offender was remanded to the custody of the

Wisconsin Department of Corrections and manually corrected judgments of

conviction that imposed sentences beyond the statutory maximums. In 2004,

John Sabo was sentenced to a term of probation that exceeded the statutory

maximum.  In 2005, the year after Plaintiff Sabo's sentencing, Hicks and Haley

7

discovered that they had been operating under a mistaken notion as to maximum terms of probation for several months, and that they had let many unlawfully long probation terms evade their review and correction. Their review of Mr. Sabo's sentence occurred during this time, and his unlawfully long term of probation had crossed their desks uncorrected.

Despite their realization that a defined subset[6] of the probation sentences they had reviewed had remained unlawfully long after their examination, neither Hicks nor Haley took any steps to investigate or remedy these errors. *Id.*, 100 F.4th at 884.

The panel dissenting opinion states that "the question is whether employees in the Wisconsin Department of Corrections Central Records Unit can be held personally liable for failing to catch the error earlier." *Id.*, 100 F.4th at 892 (St. Eve., J., dissenting). That is incorrect. The Central Records Unit Defendants, Haley and Hicks, learned in 2005 that they had made errors in a large number of

---

[6] The panel majority opinion says "The defendants estimate that between 1,000 and 1,500 of the sentences reviewed by Hicks and Haley had errors in the probation terms and concede that no action was taken to correct this problem." 100 F.4th at 884. This range was extrapolated by the Defendants from the First Amended Complaint's allegation that "In 2004, approximately five or six judgments of conviction needed to [be] corrected in this way each day." (Brief of Defendants-Appellees, dkt. # 23, at 13; Sep. App. 70, dkt. # 10, ¶416.) Thus, the Defendants' projected range is based on the number of sentencing-judge errors *of all kinds* relating to setting probation terms that Hicks and Haley were catching and correcting in 2004, which was before they learned of their misunderstanding, and there is little reason to see it as a reliable projection of the number of sentencing errors they were missing because of their misunderstanding.

8

cases over a known period (Sep. App. 71, dkt. # 10, ¶¶ 418-420), and nobody has suggested that they violated the Eighth Amendment by making these errors or by failing to catch these errors earlier than they did.  The question presented is whether, after they had realized their error, they violated Mr. Sabo's rights when they deliberately ignored it instead of taking any reasonable corrective measure. There is no issue at all relating to whether "Hicks and Haley owed Sabo a duty when they initially reviewed his file." 100 F.4th at 893.

The panel dissenting opinion then faults the First Amended Complaint for failing to allege that Hicks and Haley had any duty to Mr. Sabo under the Eighth Amendment, saying "Sabo's only allegations regarding duty are conclusions of law." *Id*., 100 F.4th 880, at 893.

Admittedly, it is possible to imagine a scenario in which a given person might not have a constitutional duty to take action even after learning of a serious risk of constitutional injury to members of a defined group. Suppose a prisoner confined beyond the lawful end of his sentence wrote about his plight to a family member who then showed the prisoner's letter to a local game warden. Game wardens are state actors, but their duties have little intersection with the proper running of prisons or courts, so a lawsuit against the game warden for doing nothing after seeing the letter would properly fail for want of duty.

9

The courts confronting the issue of duty in this context have seen it as part of the determination of deliberate indifference. Wisconsin Eastern District Judge Griesbach faced a similar issue in 2010 and borrowed the following example for his analysis:

> Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it. A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter. On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present.

*Watford v. Miller*, No. 09-C-244, 2010 WL 1257812, at *4 (E.D. Wis. Mar. 26, 2010), quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989). Judge Griesbach also found support in Judge Easterbrook's discussion in *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir.2009)("Public officials do not have a free-floating obligation to put things to rights. . .The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.")

Here, Hicks and Haley were the very people to whom the Department of Correction had relegated the duty of correcting unlawful sentences.. They were

in almost exactly the position of Defendant Diecks, in *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989), who, "as senior records officer, had the responsibility to review inmates' sentencing status and the authority to direct the release of inmates whose time had been served."

Given their positions, if they did not have any duty to take some reasonable action when they learned that hundreds of Wisconsin offenders would be serving unlawfully long terms of probation, then nobody had such a duty, and this conclusion would be tantamount to rendering the Eighth Amendment's shield against unlawfully long incarceration utterly illusory.

## II. This Court's Prior Decisions Compel Rejection of the Qualified Immunity Defense.

The panel dissenting opinion contends that Hicks and Haley are shielded from liability by qualified immunity.  That defense was rejected in *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016). There, this Court said, "At the time Figgs presented his complaints, it was clearly established by decisions in closely analogous cases that the failure to investigate a claim that an inmate is being held longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." *Id*.

11

This holding controls the result here. Courts "take care to look at the right violated in a particularized sense, rather than at a high level of generality," but "a case directly on point is not required for a right to be clearly established and 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012) (citations omitted). "Although earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Estate of Escobedo v. Bender,* 600 F.3d 770, 781 (7th Cir. 2010), citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "Rather, even where there are notable factual distinctions between the precedents relied on and the case before the Court, if the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights they can demonstrate clearly established law." *Id.* The law of the land still remains that for a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739. The "salient question . . . is not whether there is a prior case identical to the . . . current claim but whether the state of the law at the relevant time gave the Defendants fair warning that their treatment of [the plaintiff] was unconstitutional." *Estate of Escobedo*, 600 F.3d at 781.

These principles make the style of argument adopted in certain parts of the panel dissenting opinion, that of pointing out factual differences between prior authorities and the case at bar without offering any suggestion as to how reasonable officials in the shoes of Hicks and Haley might have believed their complete inaction to be lawful, unpersuasive.

Although *Figgs* was decided after the time when Hicks and Haley decided to let sleeping dogs lie, *Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001) gave fair warning to officials in the Seventh Circuit, long before Hicks and Haley had to make their choice, that holding a prisoner in custody beyond the termination of his sentence without penological justification violates the Eighth Amendment if it is the result of deliberate indifference.

Moreover, the cases upon which Figgs was based had been decided before Hicks and Haley learned they had been applying the wrong paradigm to probation terms: *Haygood v. Younger*, 769 F.2d 1350, 1354–55 (9th Cir. 1985); *Sample v. Diecks*, 885 F.2d 1099, 1108–10 (3d Cir. 1989); and *Alexander v. Perrill*, 916 F.2d 1392, 1397–99 (9th Cir. 1990). *Figgs*, 829 F.3d at 906.[7] So, unless Hicks and

---

[7] If, for any reason, *Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001) did not settle the matter, then *Figgs* was not wrong to look to the law of other circuits. In deciding qualified immunity, the survey is broadened beyond this circuit to include all relevant case law only in the absence of controlling precedent on the issue from the Supreme Court or this Court. *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d at 527-28 ("Qualified immunity protects an officer from

Haley can identify some disjunction between the principles of law enunciated in those authorities and the facts that might have permitted reasonable functionaries in their position to think that doing nothing was acting lawfully, *Figgs* compels rejection of qualified immunity.

The panel dissenting opinion makes an effort to do this, saying, "neither we nor any other court has ever said that an administrative corrections employee tasked with reviewing sentences owes a duty to every person under sentence such that a failure to correct a miscalculation, without any notice of a specific mistake in a particular person's record, amounts to a constitutional violation." *Sabo*, 100 F.4th at 894.

The panel dissenting opinion never concedes what became the linchpin of the majority opinion's analysis, that Hicks and Haley "had actual knowledge that a *specific group of people*—probationers whose sentences they had reviewed under the wrong standard between 2003 and 2005—were at a substantial risk of serving unlawfully long probation terms." 100 F.4th at 888 (emphasis supplied). Rather,

_____

liability if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time. In determining whether a right is clearly established, we look first to controlling precedent on the issue from the Supreme Court and from this circuit. If such precedent is lacking, we look to all relevant case law to determine whether there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.") (internal citations and quotation marks omitted.)

14

the panel dissenting opinion continually implies that the only two possible situations where compliance with the Eighth Amendment must be determined are 1) where an official had "knowledge of a risk of an inaccurate calculation for a particular person" 100 F.4th at 894, and 2) where the risk of random, unpredictable, human error is common to all convicted offenders. 100 F.4th at 893 ("no legal authority imposes a duty on administrative state employees under the Eighth Amendment of the Constitution to check tens of thousands of sentences *just in case a state court handed down an inaccurate one*.") (emphasis supplied); 100 F.4th at 895 ("Sabo alleges only a generalized duty to review inmates' files, not any facts suggesting Hicks and Haley had reason to revisit his file in particular.") It endeavors to steer away from the scenario between these two extremes – where a government official learns of a particular risk of serious injury, not to a single offender and not to all offenders, but to a well-defined group of offenders.

> **A.** **Mr. Sabo does not Contend that the Only Way for Hicks and Haley to Have Avoided Being Deliberately Indifferent was to Perform a Complete Review of Thousands of Sentences – They Just had to do Something Reasonable.**

The panel dissenting opinion also mischaracterizes Mr. Sabo's argument when it suggests that under his (and the panel majority's) analysis, the only way for Hicks and Haley to have avoided running afoul of the constitution was to

recheck thousands of sentences: "Three cases holding that officials must respond to a specific inmate's complaint that he is being wrongfully imprisoned have enlarged into a rule that state administrative employees must review tens of thousands of sentences or face personal liability if a judge imposed an excessive probation term." 100 F.4th at 897. It has never been Mr. Sabo's position that either a complete review of thousands of judgments of conviction, or any other single specific action, was constitutionally required of Hicks and Haley. What was required was just some reasonable response, rather than no response. *See, e.g.*, *Borello v. Allison*, 446 F.3d 742, 749 (7th Cir. 2006)( official's constitutional obligation is to take reasonable steps under the circumstances to abate the risk). *See also, e.g., Estate of Novack ex rel. Turbin v. Wood County*, 226 F.3d 525, 529 (7th Cir. 2000). ("In order to be liable under the Eighth Amendment, a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act.")

This requirement of some reasonable response comes straight from *Farmer v. Brennan*: "[W]e . . . hold that a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that

risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511
U.S. 825, 847 (1994).

Depending on the circumstances, many alternative courses of action, alone
or in combination, can represent reasonable steps in the face of knowledge of an
imminent constitutional injury.  In this case, for example, Hicks and Haley
would be in a far more favorable position if they had simply notified the
Department of Corrections Office of Legal Counsel of the situation, or sent out an
email alerting field probation agents that some of their clients were inevitably
going to appear on their rosters with unlawfully long terms of probation, and
any with probation terms longer than three years for Class H felony convictions
ought to be referred for review.

## III.     The First Amended Complaint Adequately Alleges Proximate Cause, to the Extent this may be Required.

The dissenting panel opinion would hold that the First Amended
Complaint was properly dismissed for failure to allege facts from which it can be
inferred that the inaction of Hicks and Haley was a cause of Mr. Sabo spending
too long on probation. 100 F.4th at 895. To begin with, "Damages are not an
element of liability in a deliberate indifference claim." *Cotts v. Osafo*, 692 F.3d 564,
569 (7th Cir. 2012). A plaintiff who proves every liability element at trial but fails

to prove injury is still entitled to nominal damages for the violation of his Eighth Amendment constitutional right. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir.2003).[8]

The dissenting panel opinion suggests that a superseding cause may preclude recovery because there were others at fault in the long chain of events, and "in the intervening years, Sabo or his attorney could have asked the state court to correct his sentence." 100 F.4th at 895. But contributory negligence is not a defense to an Eighth Amendment claim because the claim involves reckless conduct. *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990) See also *Estate of Moreno by and through Moreno v. Correctional Healthcare Companies, Inc.*, NO: 4:18-CV-5171-RMP, 2019 WL 10733237, at *2–3 (E.D. Wash. Aug. 5, 2019) ("[S]everal federal courts have recognized that the traditional tort affirmative defenses of comparative fault and contributory negligence ... do not apply in section 1983 actions.").

---

[8] This principle also controls the fate of the panel dissenting opinion's contention that the law applicable to Hicks and Haley was not clearly established because it came from cases where the consequence of the defendants' deliberate indifference was unlawfully prolonged imprisonment and the only certain consequence of their inaction in Mr. Sabo's case was unlawfully prolonged probation, with any additional incarceration eventuating only if he became subject to revocation. 100 F.4th at 897 ("the qualified immunity doctrine requires us to mind distinctions like these.") Since the difference between unlawful incarceration and the unlawful "custody" (majority opinion, 100 F.4th at 887) of probation is a difference in damages only, not affecting the determination of liability, it can hardly keep decisions on either side of the incarceration/probation line from clearly establishing the rules of liability on the other.

Moreover, a cause can be described as superseding only if "the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996) quoting 1 T. Schoenbaum, Admiralty and Maritime Law § 5–3, pp. 165–166 (2d ed.1994). As with the general rule of damages for § 1983 cases, which is that foreseeable damages are recoverable, one of the keystones of the superseding cause doctrine is foreseeability – an act that qualifies as a superseding cause is one that is 1) culpable; 2) of a third party; and 3) *not* foreseeable. When Hicks and Haley realized that they, who were responsible experts focused on sentence review, had made an error that let many unlawfully long probation terms escape their correction, they had to know that if they did nothing, nobody else was likely to have the opportunity to repair the damage. By the time these judgments of conviction reached their desks for review, the errors in them had already gotten past the sentencing judge, the prosecutor, and the defense lawyer, all of whom had moved on to other matters. There was nobody in the review and correction business further on down the line, and even if there had been, Hicks and Haley can hardly be heard to call unforeseeable the fact that others might make the same error they had. At the very least, foreseeability ought to be a question for the trier of fact.

## IV. This Case is not like Those Where the Court Relied only upon a General Risk of Human Error.

The panel dissenting opinion places great weight on an unpublished decision of this Court litigated by a *pro se* prisoner, *Perrault v. Wisconsin Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016). 100 F.4th at 898. But in order to attempt a persuasive presentation from this case, the panel dissent has to dig beyond what this Court said, and even beyond what Judge Crabb said in the screening opinion this Court affirmed, to things those opinions did not consider. Perrault's allegations quoted in the dissenting panel opinion, the source of which it does not cite, come from Mr. Perrault's Proposed Amended Complaint.[9]

These paragraphs were not considered either by either Judge Crabb in her screening opinion dismissing the Amended Complaint nor by this Court. Judge Crabb said that the plaintiff had pointed to no more specific risk than, essentially, the knowledge that to err is human, in claiming that the defendants had failed to notice that the circuit judge's sentence was unlawful and correct his legal error. She wrote:

> Even if I were to conclude that prison administrators or prison record keepers had a constitutional obligation to identify and take some sort of action to correct a judge's unlawful sentencing order, I still would dismiss plaintiff's Eighth Amendment claim because he

---

[9] This document is available on Pacer at
https://ecf.wiwd.uscourts.gov/doc1/20504534880, last accessed July 22, 2024.

fails to allege that defendants had "actual knowledge of [a] substantial risk" that his sentence was unlawful. *Campbell v. Illinois Department of Corrections*, 907 F. Supp. 1173, 1179 (N.D. Ill. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). See also *Sample v. Diecks*, 885 F.21099, 1110 (3d Cir. 1989) ("To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted."). This "actual knowledge" standard requires a plaintiff to show that an official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that they "also dr[ew] the inference." *Farmer*, 511 U.S. at 837.

Plaintiff has done little more than allege that defendants were aware of a risk of unlawful sentences generally; not that they were aware of a specific risk that his sentence was unlawful. For example, plaintiff asserts that various defendants were aware of Wisconsin's sentencing laws and knew that illegal sentences often had to be corrected. However, it is not possible to infer from his allegations that defendants were aware of a substantial risk that the particular sentence in his case was illegal. Simply alleging that defendants were aware of the general possibility that prisoners' sentences may be inconsistent with Wisconsin law does not state a claim for deliberate indifference in violation of the Eighth Amendment. *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (plaintiffs must demonstrate that defendants had "actual notice of a specific risk of serious harm so as to find [defendants] deliberately indifferent"); *James v. Milwaukee County*, 956 F.2d 696, 701 (7th Cir. 1992) (deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in prison).

*Perrault v. State*, No. 15-CV-144-BBC, 2016 WL 126918, at *2–3 (W.D. Wis. Jan. 11, 2016), aff'd sub nom. *Perrault v. Wisconsin Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016).

In *Perrault,* Judge Crabb, and this Court identified the risk of which the defendants were aware as that risk common to every single inmate sentenced to prison: the risk that the sentencing judge might get the sentence wrong. In *Sample v. Diecks*, cited by Judge Crabb, the Third Circuit explained why such a general risk of error is not enough to implicate the Eighth Amendment:

> The administration of a system of punishment entails an unavoidable risk of error. In the case of punishment through imprisonment, those errors may result in harms to inmates. Elimination of the risk of error in many instances would be either literally impossible or unfeasible because prohibitively costly. Thus unforeseeable accidents or inadvertent mistakes may occur during imprisonment, resulting in harms to inmates. Such accidents or mistakes are a necessary cost of any prison system.

*Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989).

The knowledge that is an element of deliberate indifference is knowledge of the facts that demonstrate a *particular* risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") In this case, Hicks and Haley had actual knowledge of a particular risk of harm: that many of the probationers who had been sentenced to probation for conviction of a class H felony, whose sentences had been checked for legality during a limited period of time when, as they belatedly realized, they had been applying an incorrect criterion, would serve

unlawfully long sentences. They knew of the specific risk, and they knew the particular group of probationers who were subject to that risk. That group included only persons who had been placed on probation during 2004 and in early 2005, before they discovered their error. (Sep. App. 70, dkt. # 10, ¶ 417.)

Like Judge Crabb's decision, this Court's unsigned *Perrault* opinion[10] appears to have considered only the failure of certain unspecified defendants to catch the sentencing error on initial review – an error that everyone currently before the court concedes was, at most, negligence, not deliberate indifference. *Perrault v. Wisconsin Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016).

In sum, neither Judge Crabb's opinion in *Perrault* nor this Court's affirmance dealt with the fact that Hicks and Haley had learned in 2005 that they had let unlawfully long terms of probation escape their review and correction over the preceding several months, and had done nothing to mitigate the injuries to this defined group of offenders caused by their earlier misunderstanding, even though, as the panel dissenting opinion points out, 100 F.4th at 898, these facts were alleged in the Proposed Amended Complaint.

Given that Mr. Perrault was litigating his case pro se and that the Judge Crabb's decision was a 28 U.S.C. § 1915A screening order without the benefit of

---

[10] The slip copy of this opinion is stamped "Nonprecedential Disposition to be cited only in accordance with Fed. R. App. P. 32.1."

adversarial argument, if this omission had been inadvertent, it could be easily

forgiven, but it turns out there was good reason for it: Mr. Perrault could not

have been affected by Hicks's and Haley's decision to ignore the unlawfully long

*probation* terms they learned about in 2005, because (unlike John Sabo) Mr.

Perrault was not on probation when he was revoked and re-incarcerated. His

claim was that Hicks and Haley had failed to note that his sentencing judge had

imposed an unlawfully long term of *extended supervision*. *Perrault v. State*, No. 15-

CV-144-BBC, 2016 WL 126918, at *1 ("None of the defendants noticed that the

judge had imposed a five-year term of extended supervision rather than the

maximum penalty of three years.")[11]

There was no explanation offered by Mr. Perrault for the fact that the error

in his sentence escaped review and correction in the Central Records Unit

beyond simple human error. There was no reason for Judge Crabb or this Court

to address the fact that Hicks and Haley had learned of a particular risk of

serious harm to a defined group of offenders sentenced to excessive terms of

---

[11] That this was Perrault's grievance was easily discernable from his Proposed
Amended Complaint, *supra*. at n. 9. Paragraph 101 states that he was kept "on
extended supervision for 395 days beyond the date when his extended
supervision should have lawfully expired." Paragraph 403 alleges that he was
sentenced to five years initial confinement followed by five years extended
supervision, and paragraph 404 alleges that the maximum term of extended
supervision for his offense was three years.

probation in 2004 and 2005, and had taken no action, because Mr. Perrault had not been injured by that decision.

## CONCLUSION

This Court should reverse the district court's decision to dismiss Mr. Sabo's claims asserted in paragraph 501 of the First Amended Complaint that Defendants Hicks and Haley were deliberately indifferent to his unlawfully long term of probation.

Dated this Thursday, July 25, 2024.

Respectfully submitted,

John Sabo,

Plaintiff–Appellant,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
Jeff Scott Olson
(*Counsel of Record*)
State Bar No. 1016284
1025 Quinn Drive, Suite 500
Waunakee, WI 53597-2502
Phone:      608 283 6001
Facsimile:  608 283 0945
e-mail:     jsolson@scofflaw.com

/s/Jeff Scott Olson

_____
JEFF SCOTT OLSON
Attorneys for Plaintiff-Appellant

## Rule 32(a)(7) CERTIFICATION

This brief complies with the type-volume limitation of the Court's Order granting rehearing en banc (dkt. # 40) inasmuch as it does not exceed 7,000 words.  The length of this brief from the Facts through the Conclusion is 6,319 words.

Dated this Thursday, July 25, 2024.

/s/Jeff Scott Olson

_____
Jeff Scott Olson

## FORMER CIRCUIT RULE 31(e) CERTIFICATE

The undersigned counsel of record hereby certifies as follows:

1.      This brief has been reproduced digitally in non-scanned pdf format and uploaded to the Court's website.

/s/Jeff Scott Olson

_____
Jeff Scott Olson

## CERTIFICATE OF SERVICE

I hereby certify that on Thursday, July 25, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Jeff Scott Olson

_____

Jeff Scott Olson